547 S.E.2d 881

**SOUTH CAROLINA DEPARTMENT OF CONSUMER AFFAIRS, Appellant,**

v.

**RENT–A–CENTER, INC., a/k/a Thorn Americans, Inc., Respondent.**

**No. 3329.**

Court of Appeals of South Carolina.

Heard March 7, 2001.

Decided April 16, 2001.

Rehearing Denied July 2, 2001.

252

Helen Fennell, of South Carolina Department of Consumer Affairs, of Columbia, for appellant.

Thomas H. Pope, III, of Pope & Hudgens, of Newberry, for respondent.

HOWARD, Judge:

The South Carolina Department of Consumer Affairs ("Department") brought this action to prevent Rent–a–Center, Inc. a/k/a Thorn Americans, Inc. from charging a "liability damage waiver fee" in connection with consumer rental-purchase transactions regulated by Part 7, Chapter 2 of the South Carolina Consumer Protection Code ("SCCPC"). S.C.Code Ann. §§ 37–2–701 to –714 (1989 & Supp.2000). A special hearing officer determined the fee was authorized by the SCCPC. The circuit court affirmed. We also affirm.

## FACTS/PROCEDURAL HISTORY

Rent–A–Center is a "lessor" as that term is defined in Part 7, Chapter 2 of the SCCPC. S.C.Code Ann. § 37–2–701(4) (1989). Rent–A–Center offers consumers the option of paying a monthly fee entitled "Liability Damage Waiver," in return for which Rent–A–Center relieves the consumer from the contract obligation to pay the fair market price of the rented item in the event it is damaged, destroyed, or lost during the course of the rental contract through fire, lightning, wind-

storm, flood, smoke, or theft. The purchase of this waiver is optional.

The consumer rental-purchase form used by Rent–A–Center provides in its heading that the liability damage waiver is optional, and a space is provided for the customer to accept or decline it. The amount of the waiver fee is separately displayed on the rental-purchase form, and the form states that the customer may cancel the waiver protection at any time and still continue the rental-purchase agreement.

In 1990, the Department took the position that liability damage waiver fees were not permitted under the SCCPC. Rent–A–Center disagreed and continued to assess the fee. The Department brought this action to enjoin these assessments.

A hearing was ultimately held before a specially appointed hearing officer based upon stipulated facts. The hearing officer concluded that the SCCPC contained no express or implied prohibition against liability damage waiver fees in consumer rental-purchase agreements. The special hearing officer also concluded Rent–A–Center's liability damage waiver fees were not default charges and were not prohibited. The Department appealed to the circuit court, and the circuit court affirmed the decision of the special hearing officer.

## ANALYSIS

The Department asserts that liability damage waiver fees are not specifically allowed by the SCCPC and are, therefore, prohibited by negative implication.[1] We disagree.

A consumer rental-purchase agreement is defined in section 37–2–701(6) as follows:

"Consumer rental-purchase agreement" means an agreement for the use of personal property by an individual primarily for personal, family, or household purposes, for an initial period of four months or less (whether or not there is any obligation beyond the initial period) that is automatically renewable with each payment and that permits the consumer to become the owner of the property. The term

---

**1.** There is no claim by the Department that the liability damage waiver fee is unconscionable. *See* S.C.Code Ann. § 37–5–108(2) (Supp.2000).

does not include a consumer credit sale as defined in § 37–2–104, or a consumer loan as defined in § 37–3–104, or a refinancing or consolidation thereof, or a consumer lease as defined in § 37–2–106.

S.C.Code Ann. § 37–2–701(6) (1989). It is distinguishable from a consumer lease by the length of the obligation. A consumer lease, by definition, exceeds four months, whereas a rental-purchase lease obligation is for an initial period of four months or less, automatically renewable with each payment. Unlike lease-purchase agreements, the term rental-purchase agreement does not include "consumer credit sales" under the SCCPC. *See* S.C.Code Ann. § 37–2–701(6) (1989); *cf.* S.C.Code Ann § 37–2–105(4) (1989) (defining "sale of goods" in a lease situation).

This distinction is significant, because Part 2 of Chapter 2, regulating consumer credit sales, contains a provision expressly delineating charges which a creditor is permitted to include in addition to a credit service charge. S.C.Code Ann. § 37–2–202 (1989 & Supp.2000). This provision has been interpreted as limiting additional charges allowable under the SCCPC in a consumer credit sale to those set forth in section 37–2–202. *See Fanning v. Fritz's Pontiac–Cadillac–Buick, Inc.*, 322 S.C. 399, 402, 472 S.E.2d 242, 244 (1996) (finding that procurement fee was not a charge allowable under section 37–2–202, but was permissible because it was an element of the negotiated purchase price of the vehicle charged to all customers and, therefore, was not an additional fee).

■■■■ The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible. *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). Generally, parties are free to contract for terms upon which they agree. *Huckaby v. Confederate Motor Speedway, Inc.*, 276 S.C. 629, 630, 281 S.E.2d 223, 224 (1981) ("[P]eople should be free to contract as they choose."). However, it "is well settled that the right to contract is not without limitations, but is subject to reasonable regulations in order to protect an overriding public interest." *Rowell v. Harleysville Mut. Ins. Co.*, 272 S.C. 108, 111–12, 250 S.E.2d 111, 113 (1978), *overruled on other grounds by G–H Ins. Agency, Inc. v. Cont'l Ins. Co.*, 278 S.C. 241, 294 S.E.2d 336 (1982).

 There is no counterpart to section 37–2–202 in Part 7 of Chapter 2. Nevertheless, the Department argues the failure of the Legislature to specifically authorize liability damage waiver fees should be interpreted as their intention to exclude them. "The canon of construction 'expressio unius est exclusio alterius' or 'inclusio unius est exclusio alterius' holds that 'to express or include one thing implies the exclusion of another, or of the alternative.'" *Rainey*, 341 S.C. at 86, 533 S.E.2d at 582 (quoting *Black's Law Dictionary* 602 (7th ed.1999)); *see Evins v. Richland County Historic Pres. Comm'n*, 341 S.C. 15, 19, 532 S.E.2d 876, 878 (2000). The maxim should be used to accomplish legislative intent, not defeat it. *See Home Bldg. & Loan Ass'n v. City of Spartanburg*, 185 S.C. 313, 321, 194 S.E. 139, 142 (1937). The maxim "is a rule of statutory construction; it is not a rule of substantive law. Accordingly, [it] 'should be used with care.'" *Rainey*, 341 S.C. at 96 n. 1, 533 S.E.2d at 587 n. 1 (Burnett, J., dissenting) (quoting Norman J. Singer, *Sutherland Statutory Construction* § 47.25 at 234 (5th ed.1992)).

 There is no provision specifying allowable charges in a rental-purchase contract, such as section 37–2–202 dealing with consumer credit sales. Neither is there a provision prohibiting liability damage waiver fees or generally prohibiting fees not explicitly authorized. Furthermore, as to those charges specifically described in connection with a consumer lease-purchase agreement, there is no language indicating they were intended to be exhaustive.

Within Part 7 of Chapter 2, several code sections place limitations and disclosure requirements on specific charges. *See* S.C.Code Ann. § 37–2–705 (1989) (delinquency charges); S.C.Code Ann. § 37–2–706 (1989) (deposits, delivery charges, and pick-up charges). Default charges are expressly prohibited, except as provided in Part 7. S.C.Code Ann. § 37–2–707 (1989). Therefore, the Department's conclusion that by naming specifically allowable charges, the Legislature intended to exclude all others, has no logical basis. The opposite conclusion is equally plausible; that is, by specifically listing prohibited charges, the Legislature intended to allow others unless found to be fraudulent or unconscionable.

Moreover, section 37–2–702, dealing with disclosure requirements in a rental-purchase contract, states that a contract must contain "[a] statement that the total of payments does not include *other charges, such as late payment charges,* and that the consumer should see the contract for an explanation of these charges." S.C.Code Ann. § 37–2–702(1)(d) (1989) (emphasis added). This provision indicates that disclosure is the only requirement, so long as the additional charge is not specifically prohibited or limited within the SCCPC or found to be unconscionable as defined in section 37–5–108. Furthermore, we note that the only charges specifically enumerated in Part 7 of Chapter 2, SCCPC, are those dealing with the delivery of items, pick-up of payments, deposits, and default. *See* S.C.Code Ann. §§ 37–2–706 to –707 (1989). Had the Legislature intended those to be the only allowable charges, those charges could easily have been identified by name in section 37–2–702(1)(d). To the contrary, the phrase "other charges, such as late payment charges," implies that the Legislature intended to encompass all possible charges of a like nature which might be included in a rental-purchase contract.

For these reasons, we find no error in the decision of the circuit court to affirm the special hearing officer's ruling on this issue.

■ As an alternative argument, the Department contends liability damage waiver fees are default charges prohibited under section 37–2–707.[2] We disagree.

The liability damage waiver fees charged by Rent–A–Center are not assessed against the customer as a result of a default; instead, they are paid at a time when there is no default, thereby allowing a consumer to avoid liability in the event of certain kinds of default. Default occurs if the consumer fails to make a payment as required and fails to return the rented property when required by agreement or if the prospect of payment, performance, or realization of collateral is signifi-

---

2. Section 37–2–707 provides: "Except as specifically provided for in this part, a consumer rental-purchase agreement may not provide for any charges as a result of the default of the lessee. A provision in violation of this section is unenforceable." S.C.Code Ann. § 37–2–707 (1989).

cantly impaired. *See* S.C.Code Ann. § 37–5–109 (Supp.2000). If a customer accepts the option of paying the fee, Rent–A–Center collects the fee for the liability damage waiver provision even though the property may not suffer damage or be lost through theft or other disaster. The customer is still obligated to return non-purchased goods at the end of the rental period, even though the fee has been paid. The fee is paid even in the absence of events triggering default. Therefore, the circuit court correctly affirmed the conclusion of the special hearing officer that the fees do not constitute default charges.

## CONCLUSION

For the foregoing reasons, the decision of the circuit court is **AFFIRMED.**

CONNOR, and HUFF, JJ., concur.