732 S.E.2d 185

**James D. BROACH and Mark Loomis, Respondents,**

**v.**

**Eugene E. CARTER, Advantage Real Estate, Inc., SilverDeer Management, LLC, Paradise Grande, LLC d/b/a The Horizon at 77th, and Howard Jacobson, Defendants,**

**Of whom Howard Jacobson is Appellant.**

Appellate Case No. 2011–182306.

No. 5006.

Court of Appeals of South Carolina.

Heard April 25, 2012.

Decided July 25, 2012.

Withdrawn, Substituted and Refiled Sept. 5, 2012.

436

Mark D. Neill, of The Neill Law Firm, of Murrells Inlet, for Appellant.

Lawrence S. Connor, IV, of Kelaher Connell & Connor, PC, of Surfside Beach, for Respondents.

WILLIAMS, J.

On appeal, Howard Jacobson (Jacobson) contends there is no evidence in the record to support the jury's finding he was personally liable on behalf of Paradise Grande, LLC (Paradise Grande). Additionally, Jacobson argues there is no evidence in the record to support a jury's finding that Jacobson tortiously interfered with James Broach's (Broach) and Mark Loomis's (Loomis) contracts with Advantage Real Estate, Inc. (Advantage). Finally, Jacobson argues the record does not support the jury's award of punitive damages. We reverse.

**FACTS**

This case concerns two real estate agents who sued to collect unpaid real estate commissions. Broach and Loomis worked as independent contractors for Advantage to obtain sales of various properties, including condominium units, known as Horizon 77th (Horizon), to be built by Paradise Grande.

Broach and Loomis separately entered into identical contracts with Advantage. The contracts' provisions, contained in the Independent Contractor and Broker Agreements (Independent Contractor Agreements), provided the general terms and conditions of Broach's and Loomis's working relationship with Advantage. The Independent Contractor Agreements also outlined the fee agreement, which provided that Broach's and Loomis's commissions would be paid after Advantage received payment from the buyer. Both Broach and Loomis acknowledged at trial their understanding was they would be paid their share of the commissions after Advantage received payment upon closing. Broach and Loomis worked for several years obtaining presales, sales, and closings of condominium units at Horizon. Accordingly, Broach and Loomis claim they are owed sales commissions arising from the sale of condominiums at Horizon. This case turns on the various agreements between the parties, which are discussed below.

## A. The First Agreement

Paradise Grande entered into an Exclusive Sales and Marketing Agreement (First Agreement) with Advantage on February 24, 2006. Jacobson, the manager of SilverDeer Management, LLC (SilverDeer), which manages Paradise Grande, signed the First Agreement on behalf of Paradise Grande. Advantage's broker-in-charge, Eugene Carter (Carter), signed the First Agreement on behalf of Advantage. The First Agreement provided, "Paradise Grande could terminate the agreement for cause if Advantage failed to have *all units* presold by August 31, 2006." (emphasis added). Further, the First Agreement stated Paradise Grande would pay Advantage a sales commission of 6% of the closing price when the final sale was closed or after repayment of the construction loan, whichever event occurred first. Advantage failed to presell all units by August 31, 2006. As a result, Paradise Grande terminated the First Agreement.

## B. Construction Loan

Paradise Grande entered into a Second Exclusive Sales and Marketing Agreement (Second Agreement) with Advantage based on negotiations between Paradise Grande and Wachovia Bank (Wachovia) concerning a construction loan. Pursuant to its agreement with Wachovia, Paradise Grande was required to have at least 80% of the condominium units at Horizon presold to obtain a construction loan. Because only 75% or 76% of the condominiums were presold, Paradise Grande renegotiated its construction loan agreement with Wachovia to provide additional security. As a part of this renegotiation, Paradise Grande agreed to provide a $500,000 letter of credit. Paradise Grande also agreed to pay furniture costs in excess of two million dollars instead of including those costs into the construction loan. In addition, Wachovia required deferment of real estate commissions that would be paid to Advantage until the construction loan was paid in full. Jacobson testified Paradise Grande pursued several other options to obtain a construction loan before finally agreeing to subordinate the real estate commissions. Further, Jacobson testified that had the letter of credit and the commission subordination not been made to Wachovia, Horizon would not have been built.

## C. The Second Agreement

Because Advantage failed to comply with the First Agreement by failing to presell all the condominium units, Advantage entered into the Second Agreement with Paradise Grande. Carter, acting on behalf of Advantage, testified that entering into the Second Agreement was a "no-brainer" decision. He further testified:

The second marketing agreement ... there was essentially no discussion about this, I mean, none. There was no deliberation. Some decisions are so clear-cut there's just no deliberation. If the project doesn't get built everybody is out of two years of work, nobody gets paid, or you—they want you to subordinate your sale—I mean, subordinate your commission, and you already have enough sales to cover it. It's a no brainer. We were all trying to get the project built.... [T]his is one of the things we need to do to get the construction loan, and it doesn't matter anyway because we've got enough sales to cover it.

Carter recognized that if Advantage refused to agree to the subordination, Wachovia would not have executed the construction loan with Paradise Grande and the Horizon project would have been cancelled. Carter did not initially tell Broach and Loomis about the subordination provision in the Second Agreement because he stated that "at the time it did not appear significant." In fact, Carter testified that when Paradise Grande entered into the Second Agreement, no one imagined Broach and Loomis would not be paid their commissions. Carter also testified, the collapse of the real estate market was not anticipated at the time. He stated at trial, "[I]t was inconceivable that that many people would walk away from their money, and—but they did.... Nobody in our industry, in our area had seen anything like that happen. It just wasn't in the realm of—considered to be in the realm of possibility."

Paradise Grande lost in excess of six million dollars, it defaulted on its construction loan, and Wachovia foreclosed on the property. As a result of the Second Agreement, all sales commissions were subordinated to the construction loan, and Advantage was never paid any commissions. Additionally, Broach and Loomis never received commissions for the Horizon condominium units they successfully sold and closed. Broach received $73,000 as a result of a sales contest created

by Paradise Grande to sell the Horizon units, but he testified he is owed an additional $135,741.39 in commissions. Loomis testified he is owed $21,917.98 in unpaid commissions.

## PROCEDURAL HISTORY

On November 19, 2008, Broach and Loomis filed their original complaint against Carter, Advantage, and Paradise Grande seeking payment of their commissions.[1] Carter, Advantage, and Paradise Grande all filed Answers. Broach and Loomis subsequently filed an Amended Summons and Complaint on September 14, 2009, to include Jacobson.[2] Carter, Advantage, Paradise Grande, and Jacobson all filed an Answer to the Amended Complaint.

A jury trial took place on November 29, 2010. The jury found Advantage and Carter breached the Independent Contractor Agreement with Broach and Loomis. In addition, the jury found Paradise Grande was not liable for tortious interference with a contract, but found Jacobson was individually liable for tortious interference with the Independent Contractor Agreements between Broach, Loomis, and Advantage. The jury awarded Broach and Loomis a total of $50,000 in actual damages and a total of $50,000 in punitive damages. Jacobson appeals.

## STANDARD OF REVIEW

"In an action at law, on appeal of a case tried by a jury, the jurisdiction of this court extends merely to the correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings." *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

Jacobson argues there is no evidence in the record to support the jury's finding that Jacobson tortiously interfered with Broach's and Loomis's Independent Contractor Agreements with Advantage. We agree.

---

1. SilverDeer and Wachovia were originally named as parties in the lawsuit but were subsequently dismissed from the lawsuit.

2. The Amended Summons and Complaint also included other defendants, but they were subsequently dismissed from the lawsuit.

▉ The elements of a cause of action for tortious interference with a contract include the following: (1) a valid contract exists; (2) the defendant has knowledge of the contract; (3) the defendant intentionally procures its breach; (4) the defendant acted without justification; and (5) the plaintiff suffers prejudice. *Vortex Sports & Entm't, Inc. v. Ware*, 378 S.C. 197, 205, 662 S.E.2d 444, 449 (Ct.App.2008).

### a. Existence of a Contract

Here, there is no dispute that Broach and Loomis both had contracts with Advantage. Even if there was a dispute, the Independent Contractor Agreement between Advantage and Broach was presented at trial without objection. Although the Independent Contractor Agreement between Advantage and Loomis was not admitted as evidence at trial, there is testimony in the record supporting the existence of a contract between Advantage and Loomis. Therefore, we find there is evidence to support the existence of contracts between Advantage and Broach and Advantage and Loomis.

### b. Knowledge of the Contracts

▉ Jacobson argues no evidence shows Jacobson had knowledge of the contracts Advantage entered into with Broach and Loomis. We disagree and find there is at least some evidence in the record to support the jury's finding Jacobson had knowledge of these Independent Contractor Agreements.

An email sent by Jacobson indicated he knew Advantage's Independent Contractor Agreements with Broach and Loomis provided for payment of commissions upon closing and the Second Agreement would interfere with Broach's and Loomis's contracts with Advantage. The email from Jacobson to Carter discussing the decision to enter into the Second Agreement states, in pertinent part:

Note that all commissions to [Advantage] must be subordinated to Bank loan, but this should not matter because we have nearly sold enough units to make the subordination of no risk to you. I must say that this [second] agreement does not address my biggest concern—that your team stops pushing Paradise Grande.... I need to know that your

team (I don't really worry about you) will ensure not just they are compensated but that I and my investors get some profit out of this deal.

We find a reasonable juror could infer this email evinces Jacobson's concern that Advantage's agents, including Broach and Loomis, would stop selling Horizon units because the Second Agreement interfered with their understanding that they would receive payment of commissions upon closing. If Jacobson lacked knowledge that Broach and Loomis contracted with Advantage to be paid upon closing, he would have no reason to be concerned that they would discontinue their efforts to sell the Horizon units. Accordingly, we find there is evidence to support a jury's conclusion that Jacobson had knowledge of the contractual terms between Broach, Loomis, and Advantage.

### c. Intentional Procurement of the Contract Breach

Additionally, we find there is evidence in the record showing Jacobson intended to procure the breach of the contracts between Broach, Loomis, and Advantage. At trial, Jacobson testified he never had any intention of *injuring* Broach and Loomis by entering into the Second Agreement. However, intent to injure is not an element of tortious interference. In *Eldeco, Inc. v. Charleston County School District,* 372 S.C. 470, 481, 642 S.E.2d 726, 732 (2007), our supreme court held:

> None of the elements required for [tortious interference with a contract] ... include "intent to harm." Although it is true that harm may result from an intentional inference with ... contractual relations, it is not necessary that the interfering party intend such harm. Instead, it is only necessary that they intended to interfere with ... an existing contract. . . .

While the issue of whether Jacobson intentionally procured the breach of contract is a close call, we find that based on our supreme court's decision in *Eldeco,* there is some evidence Jacobson intentionally interfered with Broach's and Loomis's contracts with Advantage. Even if the purpose of the subordination clause was to save the Horizon project, Jacobson directly interfered with Broach's and Loomis's Independent Contractor Agreements by negotiating the subordination clause with Wachovia while knowing the subordination would

necessitate the alteration of Broach's and Loomis's rights to immediate payment at closing.

### d. Absence of Justification

■ Jacobson argues that even if he intentionally procured the breach of the Independent Contractor Agreements, he was justified in executing the Second Agreement. We agree.

Here, the evidence in the record establishes only that Jacobson was justified in entering the Second Agreement. Advantage breached the First Agreement. As a result, Jacobson remained free to enter into a subsequent contract with Advantage on different terms. *See S.C. Dep't. of Consumer Affairs v. Rent–A–Center, Inc.,* 345 S.C. 251, 255, 547 S.E.2d 881, 883 (Ct.App.2001) ("Generally, parties are free to contract for terms upon which they agree."); *Huckaby v. Confederate Motor Speedway, Inc.,* 276 S.C. 629, 630, 281 S.E.2d 223, 224 (1981) ("[P]eople should be free to contract as they choose."). Moreover, Jacobson testified the sole purpose for the Second Agreement was to save the Horizon project so that everyone, including Broach and Loomis, could get paid. Accordingly, there is no evidence to refute Jacobson acted in good faith when exercising his legal right to contract, and we find Jacobson was justified in entering into the Second Agreement, which subordinated Broach's and Loomis's commissions.

As we find Jacobson justified in interfering with Broach's and Loomis's contracts, we find the requisite elements to establish tortious interference with a contract are not present. *See Eldeco,* 372 S.C. at 480, 642 S.E.2d at 731 (holding a plaintiff *must show* absence of justification to establish a cause of action for tortious interference with a contract). As a result, we conclude the jury's finding that Jacobson is liable for tortious interference with a contract is unsupported by the evidence, and we reverse on this ground.[3]

### B. Punitive Damages

Jacobson argues the record does not support the jury's award of punitive damages. We agree.

---

3. Because we find Jacobson's conduct was justified, we decline to address the remaining elements of tortious interference with a contract and decline to address Jacobson's argument that he cannot be held personally liable for the tort. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an

■ Based on our decision to reverse the jury's finding that Jacobson was liable for tortious interference with a contract, we must also reverse the jury's award of punitive damages. Punitive damages are predicated on the existence of actual damages, and Broach and Loomis have no other causes of action on which an actual damages award could be based. *See O'Neal v. Carolina Farm Supply of Johnston, Inc.*, 279 S.C. 490, 497, 309 S.E.2d 776, 780 (Ct.App.1983) ("Punitive damages may be recovered only if the plaintiff proves his entitlement to actual damages.").

## CONCLUSION

Accordingly, the jury's verdict is

**REVERSED.**

THOMAS and LOCKEMY, JJ., concur.

appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal); *S. Contracting, Inc. v. H.C. Brown Const. Co., Inc.*, 317 S.C. 95, 98, 450 S.E.2d 602, 604 (Ct.App.1994) (holding to establish a cause of action for tortious interference with contractual relations, the plaintiff must prove the absence of justification).