**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

North Pleasant, LLC and Vanguard Development, LLC, Appellants,

v.

South Carolina Coastal Conservation League and Edward D. Beach, Defendants,

Of whom South Carolina Coastal Conservation League is the Respondent.

Appellate Case No. 2014-000183

———————————

Appeal From Berkeley County
Roger M. Young, Sr., Circuit Court Judge

———————————

Unpublished Opinion No. 2015-UP-423
Heard May 6, 2015 – Filed August 12, 2015

———————————

**AFFIRMED**

———————————

Stanley E. Barnett and Ellison D. Smith, Smith Bundy Bybee & Barnett, PC, of Mt. Pleasant; Charles E. Reynolds, of Cincinnati, OH, all for Appellants.

John Phillips Linton, Jr., W. Andrew Gowder, Jr., and George Trenholm Walker, Pratt-Thomas Walker, PA, of Charleston, all for Respondent.

------------

**PER CURIAM:** North Pleasant, LLC and Vanguard Development Group, LLC appeal the circuit court's decision (1) to grant summary judgment in favor of South Carolina Coastal Conservation League (the League) on its cause of action under the South Carolina Unfair Trade Practices Act; and (2) to direct a verdict on its remaining three claims—tortious interference with a contract, tortious interference with prospective contractual relations, and injurious falsehood. We affirm.

In February 2005, North Pleasant—an entity comprised of businessmen, real estate agents, and developers who collectively have many decades of experience—purchased a 4,478-acre parcel of woodland property in Berkeley County located off of Highway 41 for close to $20 million. This property, known as the "Keystone tract," is in the Francis Marion National Forest and in close proximity to several historic properties along the Cooper River.

In March 2007, North Pleasant contracted with Pittenger Company—a land investment company—to sell approximately 2,600 acres of the Keystone tract for $23,920,000. As required by the sales contract, Pittenger Company paid $50,000 in earnest money. The sales contract included a 60-day inspection period for Pittenger Company to determine whether the property met its criteria for acquisition and resale to a developer. By its terms, Pittenger Company could terminate the sales contract for any reason before the end of the inspection period, and North Pleasant would be obligated to return the earnest money.

In early May 2007, during the 60-day inspection period, an employee with the League—an organization whose mission is to protect the natural environment of coastal South Carolina by working with individuals, businesses, and government to ensure balanced solutions—learned Pittenger Company had an interest in the Keystone tract. On Friday, May 18—three days before the end of the inspection period—the employee called Pittenger Company to discuss the ongoing conservation efforts involving the Keystone tract. The employee left a message. From the message and a brief return phone call, Pittenger Company learned that the League and property owners in the area "were trying to curb development on the Highway 41 corridor." On Sunday, May 20, Pittenger Company requested an

extension of the inspection period until June 4, 2007, which North Pleasant granted.

On Friday, May 25—one week after the phone call—a Pittenger Company Employee met with the Berkeley County supervisor to learn more about the development potential of the Keystone tract. At this meeting, the supervisor said the Keystone tract was in an area that Berkeley County did not consider to be "a growth area." He further stated the County would not make water and sewer lines available for residential development, and it would be costly for Pittenger Company to "bring utilities to the tract." The supervisor warned that there was "broad opposition" to developing the property, and that Pittenger Company would have "great difficulty in getting greater density" and "maintaining the present [zoning] density."

Immediately after the meeting with the supervisor, Pittenger Company terminated the contract.

North Pleasant and Vanguard Development brought four causes of action against the League: (1) tortious interference with a contract, (2) tortious interference with prospective contractual relations, (3) violation of the Unfair Trade Practices Act, and (4) injurious falsehood. The League filed a motion for summary judgment as to all causes of action. The circuit court granted summary judgment on the unfair trade practices claim because it found the League "is not engaged in trade or commerce as defined by" South Carolina Code section 39-5-10(b) (1985). As to the remaining claims, the court denied the motion and held a jury trial. At the conclusion of North Pleasant and Vanguard Development's case in chief, the League moved for a directed verdict on all causes of actions, which the court granted.

We affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1. As to whether the circuit court erred in granting summary judgment on the League's unfair trade practices claim, we find no evidence the League committed any "unfair or deceptive" acts or practices. *See Wachovia Bank, N.A. v. Coffey*, 404 S.C. 421, 425, 746 S.E.2d 35, 37 (2013) ("An appellate court reviews the granting of summary judgment under the same standard applied by the trial court under Rule 56, SCRCP." (citation and internal quotation marks omitted)); Rule 56(c), SCRCP (providing the circuit court shall grant summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law"); S.C. Code Ann. § 39-5-20(a) (1985) (stating under the Act, it is unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce"); *Johnson v. Collins Entm't Co.*, 349 S.C. 613, 636, 564 S.E.2d 653, 665 (2002) ("An act is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive; a practice is 'deceptive' when it has a tendency to deceive." (citation omitted)).

2. As to whether the circuit court erred in directing a verdict on the tortious interference with a contract and tortious interference with prospective contractual relations causes of action, we find as a matter of law the League did not cause Pittenger Company to cancel the contract and the employee was justified to make the statements to Pittenger Company. *See Erickson v. Jones St. Publishers, L.L.C.*, 368 S.C. 444, 463, 629 S.E.2d 653, 663 (2006) ("In ruling on a motion for directed verdict, the trial court must view the evidence and the inferences which reasonably can be drawn therefrom in the light most favorable to the party opposing the motion. The trial court must deny the motion when either the evidence yields more than one inference or its inference is in doubt." (citation omitted)); *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331, 732 S.E.2d 166, 171 (2012) ("When reviewing the trial court's ruling on a motion for a directed verdict . . . , this Court must apply the same standard as the trial court . . . ."); *Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC*, 406 S.C. 596, 604, 753 S.E.2d 840, 844 (2012) ("The elements of a cause of action for tortious interference with [a] contract are: (1) existence of a valid contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages." (citation and internal quotation marks omitted)); *Broach v. Carter*, 399 S.C. 434, 443, 732 S.E.2d 185, 189-90 (Ct. App. 2012) (stating the defendant must lack justification for his or her interference with a contract in order to be liable); 86 C.J.S. *Torts* § 52 (2014) ("[T]he interference must be wrongful beyond the fact of the interference. In other words, only improper interference is actionable."); *Bocook Outdoor Media, Inc. v. Summey Outdoor Adver., Inc.*, 294 S.C. 169, 177-78, 363 S.E.2d 390, 394 (Ct. App. 1987) (holding a plaintiff must prove the defendant's conduct "influence[d], induce[d], or coerce[d] one of the parties to the contract to abandon the relationship or breach the contract. The plaintiff must show that, but for the interference, the contractual relationship would have continued." (citation omitted)), *overruled on other grounds by O'Neal v. Bowles*, 314 S.C. 525, 431 S.E.2d 555 (1993); *Smith v. Citizens & S. Nat'l Bank of S.C.*, 241 S.C. 285, 288, 128 S.E.2d 112, 114 (1962) ("[T]o constitute actionable interference with a contract, it must appear that the act complained of was the proximate cause of the injury or damage." (citations omitted)); *Gause v. Smithers*,

403 S.C. 140, 150, 742 S.E.2d 644, 649 (2013) ("Proximate cause is normally a question of fact for determination by the jury . . . ."); *McKnight v. S.C. Dep't of Corr.*, 385 S.C. 380, 390, 684 S.E.2d 566, 571 (Ct. App. 2009) ("Our courts have recognized that when only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court." (citation omitted)); *Eldeco, Inc. v. Charleston Cnty. Sch. Dist.*, 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007) ("To establish a cause of action for intentional interference with prospective contractual relations, a plaintiff must show: 1) intentional interference with prospective contractual relations; 2) for an improper purpose or by improper methods; and 3) resulting in injury.").

3. As to whether the circuit court erred in directing a verdict on the claim for injurious falsehood, South Carolina recognizes no such cause of action. *See State v. Tucker*, 376 S.C. 412, 420-21, 656 S.E.2d 403, 408 (Ct. App. 2008) (recognizing the court of appeals "as an error correcting authority"); *State v. Elmore,* 368 S.C. 230, 238, 628 S.E.2d 271, 275 (Ct. App. 2006) (recognizing the supreme court as the arbiter of legal policy).

**AFFIRMED.**

**FEW, C.J., and HUFF and WILLIAMS, JJ., concur.**