# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Spring Valley Interests, LLC, Petitioner,

v.

The Best for Last, LLC, Respondent.

Appellate Case No. 2024-001994

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
Jocelyn Newman, Circuit Court Judge

---

Opinion No. 28309
Heard October 21, 2025 – Filed January 7, 2026

---

## REVERSED AND REMANDED

---

Carmen Vaughn Ganjehsani, of Richardson Plowden & Robinson, PA, of Columbia, and Kenneth Ray Raynor, of Raynor Law Firm, PLLC, of Charlotte, NC, for Petitioner.

Kirby Darr Shealy III, of Adams and Reese LLP, of Columbia, for Respondent.

---

**JUSTICE JAMES:** At common law, the rule against perpetuities mandated that "no interest is good unless it must vest, if at all, no later than twenty-one years after some life in being at the creation of the interest." *Abrams v. Templeton*, 320 S.C. 325, 327, 465 S.E.2d 117, 119 (Ct. App. 1995) (citation modified). This rule has

bedeviled law students and practitioners for ages. In this case, the property interest in dispute is a perpetual option to purchase real estate. We need not determine whether the option violates the rule; instead, we must decide the novel question of whether the South Carolina Uniform Statutory Rule Against Perpetuities (SCUSRAP), enacted in 1987, completely abolished the common law rule against perpetuities (CLRAP) with respect to nonvested property interests arising out of nondonative transfers. The option is a nonvested property interest, and the parties agree the option arose out of a nondonative transfer because it was conveyed in an arm's-length transaction for value.

Petitioner Spring Valley Interests, LLC (Spring Valley) sued Respondent The Best for Last, LLC (Best) to enforce its perpetual option. The circuit court granted Best's motion for partial summary judgment, ruling that even though the vesting requirements of the SCUSRAP do not apply to nonvested property interests arising out of nondonative transfers, the CLRAP stepped in to void the option. The court of appeals affirmed. *Spring Valley Ints., LLC v. Best for Last, LLC*, 444 S.C. 281, 907 S.E.2d 124 (Ct. App. 2024). We reverse that ruling. We remand Best's waiver defense to the circuit court for further proceedings.

## I. Background

Best was formed for the purpose of owning, developing, and managing a self-storage facility in Columbia. In 2017, White Interests Limited Partnership (White) entered into a written loan agreement with Best pursuant to which White loaned Best $800,000 for Best to purchase real property (the Property). In the loan agreement, Best granted White a freely assignable and perpetual option (Option) to purchase a 74.425% undivided co-tenancy interest in the Property. The loan agreement is evidenced by a promissory note from Best to White and is secured by a second mortgage lien on the Property.

Two years later, Best paid a $35,000 non-refundable application fee to a third-party to secure a commitment to refinance the debts (including the loan from White) encumbering the property. White learned of this and notified Best of its intent to exercise the Option. As permitted by the loan agreement, White then assigned the Option to Spring Valley. Best did not object to the assignment, but it objected to the exercise of the Option. Best and Spring Valley reached a tentative compromise to resolve the dispute, but the compromise fell apart over Spring Valley's request that Best reimburse Spring Valley for legal fees Spring Valley incurred in resolving the dispute. As a result, the refinance collapsed and Best lost its $35,000 refinance application fee.

Spring Valley sued Best for, among other things, specific performance of the Option. Best answered and asserted multiple counterclaims, including a counterclaim seeking a declaration that the Option is void because it violates the SCUSRAP and the CLRAP. Best moved for partial summary judgment on that ground. Best alternatively contended that even if the Option does not violate the SCUSRAP or the CLRAP, Spring Valley waived its right to exercise the Option because it failed to follow through on the compromise. Spring Valley moved for summary judgment on its claim for specific performance on the ground that neither the SCUSRAP nor the CLRAP voided the Option.

The circuit court granted Best's motion, denied Spring Valley's motion, and dismissed Spring Valley's claims for declaratory relief and specific performance. The circuit court ruled that although the SCUSRAP "generally" supersedes the CLRAP, the SCUSRAP does not apply to a nonvested property interest arising out of a nondonative transfer. The circuit court found the CLRAP applies and that the Option is unenforceable because it violates the CLRAP. The court of appeals affirmed. *Spring Valley Ints., LLC*, 444 S.C. at 284, 907 S.E.2d at 125.

## II. Standard of Review

Except with respect to Best's waiver argument, which we will not address, there are no material facts in dispute, and the sole issue is one of statutory construction. "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Kerr v. Richland Mem'l Hosp.*, 383 S.C. 146, 148, 678 S.E.2d 809, 811 (2009) (quoting *Mid-State Auto Auction of Lexington, Inc. v. Altman*, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996)). "Determining the proper interpretation of a statute is a question of law, and this Court reviews questions of law de novo." *Town of Summerville v. City of N. Charleston*, 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008) (citing *Catawba Indian Tribe v. State*, 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007)). Because the SCUSRAP is in derogation of the common law, we must strictly construe its provisions and ensure its application does not extend "beyond the clear intent of the legislature." *Crosby v. Glasscock Trucking Co.*, 340 S.C. 626, 628, 532 S.E.2d 856, 856-57 (2000). "[A] statute is not to be construed in derogation of common law rights if another interpretation is reasonable." *Doe v. Marion*, 361 S.C. 463, 473, 605 S.E.2d 556, 561 (Ct. App. 2004) (citing *Hoogenboom v. City of Beaufort*, 315 S.C. 306, 318 n.5, 433 S.E.2d 875, 884 n.5 (Ct. App. 1992)).

## III. Discussion

### A.

If the CLRAP applies, the Option is void. However, in 1987, the General Assembly enacted the SCUSRAP (S.C. Code Ann. §§ 27-6-10 to -80 (2007 & Supp. 2025)). The SCUSRAP has three moving parts we must construe together to determine whether the Option survives. First, even though section 27-6-80 is the last section in the SCUSRAP, its one sentence sets the stage for our construction of the SCUSRAP: "This chapter *supersedes* the common law rule against perpetuities." S.C. Code Ann. § 27-6-80 (2007) (emphasis added). Second, subsection 27-6-20(A)(1) essentially restates the CLRAP: "A nonvested property interest is invalid unless: (1) when the interest is created, it is certain to vest or terminate no later than twenty-one years after the death of an individual then alive." S.C. Code Ann. § 27-6-20(A)(1) (Supp. 2025).[1] Third, however, section 27-6-50 lists seven interests to which section 27-6-20 does not apply. S.C. Code Ann. § 27-6-50 (2007 & Supp. 2025). Most importantly, subsection 27-6-50(1) provides "Section 27-6-20 does not apply to: (1) a nonvested property interest . . . arising out of a nondonative transfer . . . ." S.C. Code Ann. § 27-6-50(1) (2007).

Because the Option is a nonvested property interest arising out of a nondonative transfer, subsection 27-6-50(1) comes into play. Both courts below correctly noted the Option is a nonvested property interest arising out of a nondonative transfer. And the courts below correctly interpreted the plain language of subsection 27-6-50(1): subsection 27-6-20(A) does not apply to nonvested property interests arising out of nondonative transfers. However, the circuit court

---

[1] Subsection 27-6-20(A)(2) added a "wait-and-see period" to the SCUSRAP, but (A)(2) is not relevant here. In May 2025—after the court of appeals issued its opinion in this case—the General Assembly amended subsection 27-6-20(A)(2) to change the wait-and-see period from 90 years to 360 years. *See* S.C. Code Ann. § 27-6-20(A)(2) (Supp. 2025) ("A nonvested property interest is invalid unless . . . the interest either vests or terminates within three hundred sixty years after its creation."). Best contends that if the General Assembly disagreed with the court of appeals' holding, it would have further amended the SCUSRAP to remedy the court of appeals' decision. This Court held in *Layton v. Flowers* that "[w]hen a statute which has been construed by a court of last resort is included in a codification of laws thereafter adopted, without significant change in phraseology, the presumption is that the legislature intended to adopt such construction." 243 S.C. 421, 424, 134 S.E.2d 247, 247-48 (1964). At the time of the 2025 amendment, Spring Valley's petition for writ of certiorari was pending before this Court, South Carolina's court of last resort. Therefore, there is no presumption that the General Assembly intended to adopt the court of appeals' construction of the SCUSRAP.

and the court of appeals then reasoned—incorrectly, as we will explain—that because subsection 27-6-20(A) does not apply to such interests, the SCUSRAP does not supersede the CLRAP as to such interests. Breathing life back into the CLRAP, the circuit court and court of appeals ruled the Option is void under the CLRAP.

The court of appeals defined "supersede" to mean "obliterate, set aside, annul, replace, . . . [t]o set aside." *See Spring Valley Ints., LLC*, 444 S.C. at 287, 907 S.E.2d at 127 (quoting *Supersede*, BLACK'S LAW DICTIONARY (6th ed. 1990)). Spring Valley argues the court of appeals erroneously resurrected the CLRAP despite the SCUSRAP's plain language superseding the CLRAP. Best argues the plain language of the SCUSRAP preserves the CLRAP as to nondonative transfers because the General Assembly did not intend for the SCUSRAP to completely abolish the CLRAP; rather, Best contends the General Assembly intended for the CLRAP to continue to apply to property interests expressly excluded from the SCUSRAP. Best further argues that excluding nondonative transfers from the purview of the rule against perpetuities is contrary to the purpose of the common law—limiting restraints on the free alienability of property. Best argues parties to commercial transactions are in a better position to avoid the consequences of the CLRAP by drafting instruments to avoid violating the rule, and applying the CLRAP to commercial transactions prevents property from being tied up in potentially perpetual arrangements.

As we will now explain, we agree with Spring Valley.

**B.**

We first rely upon the language employed by the General Assembly in the title of the Act codifying the SCUSRAP:

> AN ACT TO AMEND TITLE 27, CODE OF LAWS OF SOUTH CAROLINA, 1976, RELATING TO PROPERTY AND CONVEYANCES, BY ADDING CHAPTER 6 SO AS TO **ABOLISH** THE COMMON LAW RULE AGAINST PERPETUITIES AND **REPLACE IT** WITH A STATUTORY RULE AGAINST PERPETUITIES WHICH ADOPTS PROVISIONS WHICH PREVENT THE DEFEAT OF THE TRANSFEROR'S INTENT.

Act No. 12, 1987 S.C. Acts 20 (emphasis added). We have held "the titles of the Act and the codified section express[] the obvious intent" and "[have] heretofore endorsed the propriety of discerning legislative intent from the title of an Act." *Demas v. Convention Motor Inns*, 268 S.C. 186, 190, 232 S.E.2d 724, 726 (1977);

*see also Kennedy v. S.C. Ret. Sys.*, 345 S.C. 339, 349, 549 S.E.2d 243, 248 (2001) (where the Court looked at the title of an Act to glean legislative intent); *McMillen Feed Mills, Inc. v. Mayer*, 265 S.C. 500, 510, 220 S.E.2d 221, 225 (1975) ("The purposes, scope and effect of this Act are wholly comprehended in its title."). While "it is to be presumed that no change in the common law was intended by any statute unless the language employed clearly indicates such intention[,]" the language employed by the General Assembly in both the title of Act No. 12 and in subsection 27-6-80 manifests the General Assembly's obvious intent to abolish the CLRAP and replace it with the SCUSRAP. *See Coakley v. Tidewater Constr. Corp.*, 194 S.C. 284, 287, 9 S.E.2d 724, 726 (1940).

## C.

We next rely upon the comments to the Uniform Statutory Rule Against Perpetuities (USRAP), as drafted by the National Conference of Commissioners on Uniform State Laws. The SCUSRAP was modeled after the USRAP. The comments provide insight into the impact of the SCUSRAP on the CLRAP and the rationale behind the statutory rule. Section 4 of the USRAP mirrors section 27-6-50 of the SCUSRAP. The comments to Section 4 state:

> Section 4 lists seven exclusions from the Statutory Rule Against Perpetuities (Statutory Rule). Some are declaratory of existing law; others are contrary to existing law. Since the Common-law Rule Against Perpetuities is superseded by this Act (or a statutory version or variation thereof is repealed by this Act), **a nonvested property interest, power of appointment, or other arrangement excluded from the Statutory Rule by this section is not subject to any rule against perpetuities, statutory or otherwise.**
>
> . . .
>
> In line with long-standing scholarly commentary, **paragraph (1) [of Section 4 of the Uniform Statutory Rule] excludes . . . nonvested property interests and powers of appointment arising out of a nondonative transfer. The rationale for this exclusion is that the Rule Against Perpetuities is a wholly inappropriate instrument of social policy to use as a control over such arrangements.** The period of the rule—a life in being plus 21 years—is not suitable for nondonative transfers . . . .

UNIF. STATUTORY RULE AGAINST PERPETUITIES § 4 cmt. (NAT'L CONF. OF COMM'RS. ON UNIF. STATE LAWS 1986/1990) (emphasis added). These comments speak for themselves and support only the conclusion that the Option is not subject to any rule against perpetuities.

**D.**

The court of appeals relied heavily upon *New Bar Partnership v. Martin*, 729 S.E.2d 675 (N.C. Ct. App. 2012), in which the North Carolina Court of Appeals held (1) the North Carolina USRAP (NCUSRAP) in effect at that time did not apply to nondonative transfers; (2) commercial transactions such as the commercial lease in *New Bar* are nondonative transfers; and (3) the CLRAP applies when the NCUSRAP does not apply, and, therefore, the CLRAP applies to commercial transactions. *See Spring Valley Ints., LLC*, 444 S.C. at 287-88, 907 S.E.2d at 127. At the time *New Bar Partnership* was decided, the NCUSRAP included a similar provision to the SCUSRAP regarding the effect of the USRAP on the common law. *See* N.C. Gen. Stat. § 41-22 (repealed 2022) ("This Article supersedes the rule of the common law known as the rule against perpetuities."). Even so, we decline to follow the rationale of the North Carolina Court of Appeals for two reasons.[2] First, unlike in South Carolina, the act enacting the NCUSRAP did not include an express provision indicating the intent of the North Carolina General Assembly to abolish the common law rule and replace it with the NCUSRAP. *See* 1995 N.C. Sess. Laws 346. Furthermore, in 2022, the North Carolina General Assembly clarified its intent to abolish the CLRAP when it enacted the NCUSRAP in 1995. *See* N.C. Gen. Stat. § 41-6.5 ("The rule of the common law known as the rule against perpetuities is abolished . . . This section clarifies the intent of the General Assembly to abolish the common-law rule against perpetuities when it enacted . . . the Uniform Statutory Rule Against Perpetuities."). North Carolina's 2022 amendment leads us back to our point in section III.B above—our General Assembly clearly manifested its intent to abolish the CLRAP in Act No.12, the legislation codified in 1987 as the SCUSRAP.

---

[2] Other jurisdictions have held USRAP statutes nearly identical to the SCUSRAP abolished and replaced the CLRAP. *See Juliano & Sons Enters., Inc. v. Chevron, U.S.A., Inc.*, 593 A.2d 814, 817-18 (N.J. Super. Ct. App. Div. 1991) (holding the USRAP embodied the entire law concerning the rule against perpetuities, meaning nondonative transfers, which are exempt from the uniform rule, are "not subject to any rule against perpetuities"); *Shaver v. Clanton*, 26 Cal. App. 4th 568, 573-74, 31 Cal. Rptr. 2d 595, 598 (1994) (same).

Second, a logical reading of the SCUSRAP supports our decision not to follow the *New Bar Partnership* rationale. As we have held, section 27-6-80 manifests the General Assembly's intent to abolish the CLRAP and replace it with the SCUSRAP. The General Assembly restated the CLRAP in subsection 27-6-20(A)(1). However, it then expressly excluded from the restated CLRAP the seven interests listed in subsections 27-6-50(1)-(7). It would be absurd to conclude the General Assembly intended for the CLRAP to apply to the seven interests it expressly excluded from that very rule.

**E.**

In holding the SCUSRAP did not abolish the CLRAP, the court of appeals relied in part on public policy considerations and the settled principle that statutes in derogation of the common law must be strictly construed:

> The complete abolition of the CLRAP without some provision for limitations in commercial transactions risks putting two legal principles at odds—freedom to contract and restrictions on alienability. Generally, parties are free to contract for terms upon which they agree subject to reasonable regulations to protect an overriding public interest. *S.C. Dep't of Consumer Affs. v. Rent-A-Ctr., Inc.*, 345 S.C. 251, 255, 547 S.E.2d 881, 883 (Ct. App. 2001). One such parameter is prohibiting the enforcement of unreasonable restrictions on alienation of real property. *Wise v. Poston*, 281 S.C. 574, 579, 316 S.E.2d 412, 415 (Ct. App. 1984) ("Under South Carolina common law, any unreasonable limitation upon the power of alienation is against public policy and must be construed as having no force and effect."). Consequently, because we can construe the [SCUSRAP] in a manner that preserves the common law, we affirm the circuit court's ruling finding the purchase option void under the CLRAP.

*Spring Valley Ints., LLC*, 444 S.C. at 288-89, 907 S.E.2d at 127-28 (citation modified).

The "commercial transactions" referenced by the court of appeals include transactions such as the Option. However, we reject the court of appeals' reasoning, because in enacting the SCUSRAP, the General Assembly clearly made the policy decision to completely abolish the CLRAP with respect to nonvested property interests arising from nondonative transfers. Courts cannot implement their own public policy by resurrecting the CLRAP. *See ArrowPointe Fed. Credit Union v. Bailey*, 438 S.C. 573, 580, 884 S.E.2d 506, 509 (2023) ("Determinations of public

policy are chiefly within the province of the legislature, whose authority on these matters we must respect." (citation modified)); *Nationwide Ins. Co. of Am. v. Knight*, 433 S.C. 371, 376, 858 S.E.2d 633, 635 (2021) (observing "the General Assembly establishes the public policy . . . and enacts statutes to let the public and the courts know what that policy is"); *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 523, 377 S.E.2d 569, 570 (1989) ("It is the responsibility of this Court to construe statutes; we have no power to legislate.").

"[A] statute is not to be construed in derogation of common law rights if another interpretation is reasonable." *Marion*, 361 S.C. at 473, 605 S.E.2d at 561 (citing *Hoogenboom*, 315 S.C. at 318 n.5, 433 S.E.2d at 884 n.5); *see also Grier v. AMISUB of S.C., Inc.*, 397 S.C. 532, 536, 725 S.E.2d 693, 696 (2012) (explaining statutes in derogation of the common law are to be strictly construed). We hold the SCUSRAP cannot be reasonably construed in a manner that preserves the CLRAP.

## IV. Waiver

As an additional sustaining ground, Best argues Spring Valley waived its right to re-exercise the Option after exercising the option, agreeing to the terms of a compromise, and then failing to proceed with the compromise. Best made this argument to the circuit court, which did not rule on it. The court of appeals declined to rule on this issue because its holding that the Option is void was dispositive. *Spring Valley Ints., LLC*, 444 S.C. at 291, 907 S.E.2d at 129. We remand the waiver issue to the circuit court, as the facts surrounding the issue have not been developed, nor has the circuit court ruled upon the issue.

## V. Conclusion

For the foregoing reasons, we reverse the court of appeals and hold the Option is not voided by either the SCUSRAP or the CLRAP. We remand the waiver issue to the circuit court.

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., FEW, HILL and VERDIN, JJ., concur.**