23884

Danner B. KINARD and Kico Amusements, Inc., Respondents v. Scott A. CROSBY, Crosby Enterprises, Inc., Fred Collins, Jr., Mike Flectcher, and Collins Coin, Inc., of whom Fred Collins, Jr., Mike Fletcher, and Collins Coin, Inc., are Appellants.

(433 S.E. (2d) 835)

Supreme Court

238

*David H. Wilkins* and *Cecil H. Nelson, Jr.,* of *Wilkins & Nelson P.A.,* Greenville; *Randolph Mudaugh, Jr.,* and *J. Paul Detrick,* of *Peters, Murdaugh, Parker, Eltzroth & Detrick,* Hampton, *for appellants.*

*Richard S. Rosen* and *P. Brant Shelbourne,* of *Rosen, Rosen & Hagood,* Charleston, *for respondents.*

Heard Mar. 23 1993; Decided July 6, 1993.

Reh. Den. Aug. 17, 1993.

CHANDLER, Justice:

On appeal is a jury verdict awarded to Respondents for intentional interference with a contractual relationship. We affirm.

## FACTS

Appellants Fred Collins Jr., Mike Fletcher, and Collins Coin, Inc. (Collins)[1] and Respondents Danner Kinard and Kico Amusements, Inc. (Kico)[2] are both in the coin-operated amusement machine industry. The dispute here centers on the location of such machines at the Circle C Truck Stop, owned and operated by Crosby Enterprises and Scott Crosby. Crosby Enterprises, Scott Crosby (Crosby) and Collins were joint defendants in the Circuit Court action.

In 1984, Kico negotiated a five-year contract with Crosby Enterprises to provide and service all machines for the Truck Stop. In 1987, Kico entered into an additional contract with Crosby Enterprises for a 12-year term (ten years plus the two years remaining on the 1984 contract).

Notwithstanding these agreements, Crosby removed Kico's machines and replaced them with those of Collins.

Kico subsequently sued Collins and Crosby for intentional interference of a contractual relationship and breach of contract. Kico was awarded a jury verdict for $92,156.25 actual and $444,215.50 punitive damages, from which Collins appeals.

## ISSUES

1.  Was the evidence presented by Kico sufficient to support the denial of Collins' motions for directed verdict and judgment notwithstanding the verdict (JNOV) on the claim of intentional interference?
2.  Did the trial court err in allowing proof of damages occur-

---

[1] Fred Collins is the sole shareholder of Collins Coin, Inc. and Mike Fletcher is an employee of Colins Coin, Inc.

[2] Danner Kinard is the owner of Kico, Inc.

ring subsequent to the commencement of bankruptcy proceedings?

3. Did the trial court err in allowing evidence of Collins' attempt to purchase the Truck Stop during bankruptcy proceedings?

4. Was the trial court's charge on punitive damages erroneous?

5. Was Collins entitled to a new trial or JNOV for excessiveness of damages?

## DISCUSSION

### I. *Intentional Interference with a Contractual Relationship*

To establish intentional interference with a contractual relationship the plaintiff must prove:

(1) a contract;

(2) the wrongdoer's knowledge thereof;

(3) his intentional procurement of its breach;

(4) the absence of justification; and

(5) the damage resulting therefrom.

*Camp v. Springs Mortgage Co.*, ___ S.C. ___, 426 S.E. (2d) 304 (1992); *DeBerry v. McCain*, 275 S.C. 569, 274 S.E. (2d) 293 (1981).

Collins contends that Kico failed to prove each of the foregoing elements. We disagree.

Initially, Collins conceded at trial that there was sufficient evidence of a contract (element #1) and his own knowledge of the contract (element #2). Accordingly, these elements may not be argued on appeal.

As to elements #2, #4, and #5, the record clearly demonstrates overwhelming evidence from which the jury could find that Collins induced Crosby to wrongfully breach Kico's contract. Testimony of numerous witnesses, including former employees of the Truck Stop and of Collins, as well as members of Crosby's family, testified to a course of conduct by Collins which established intentional interference. Finally, Kico presented an expert witness who testified concerning damages suffered as a result of the contract breach.

Accordingly, Collins' motions for directed verdict and JNOV were properly denied. *Graham v. Whitaker*, 282 S.C. 393, 321 S.E. (2d) 40 (1984) (Motions for directed verdict and JNOV properly denied when evidence, viewed in light most favorable to the nonmoving party, is sufficient to support the jury's findings).

## II. *Proof of Damages*

Crosby Enterprises filed for bankruptcy in late 1989. By order of the Bankruptcy Court, all executory contracts entered into by Crosby Enterprises, including those with Kico and Collins, were "rejected." However, Collins' machines remained at the Truck Stop on an at-will basis.

Kico's expert witness, Dr. Woodside, testified that Kico's economic loss resulting from the breach of contract form 1988 through the 12-year period of the contract was $484,775. He also calculated the loss from the date of breach until the bankruptcy filing to be $203,990. The jury's verdict for actual damages was $92,156.25.

Collins contends Kico was not entitled to present evidence of damages beyond the commencement of bankruptcy. We disagree.

First, "rejection" of an executory contract under the bankruptcy code constitutes a breach, allowing the creditor to seek damages. 2 *Collier on Bankruptcy*, § 365.08 (1992). Therefore, the remaining time on the breached contract is relevant to the issue of damages. The relevancy is further substantiated by the fact that Collins' machines were still in place at the Truck Stop subsequent to the rejection of the contract.

Second, it is clear that the verdict did not include damages beyond the time of Crosby's filing for bankruptcy. Indeed, the actual damage award ($92,156.25) is less than half the figure calculated by Dr. Woodside, based upon the period of time ending with the bankruptcy. No prejudice resulted from this testimony. *See, e.g., McCall v. Finley*, 294 S.C. 1, 362 S.E. (2d) 26 (Ct. App. 1987) ("Whatever doesn't make any difference, doesn't matter.").

## III. *Evidence of Negotiations during Bankruptcy*

The trial court permitted Kico to present evidence that Collins outbid all others, including Scott Crosby's father,

Henry Crosby, for the Circle C Truck Stop at a bankruptcy auction. There was also evidence that, after bidding in the Truck Stop,[3] Collins offered to sell it back to Henry Crosby, stating that he wanted only the coin-operated machine contract.

Collins contends that the foregoing evidence was irrelevant and prejudicial, constituting reversible error. We disagree.

It is well settled that the admission of evidence is within the sound discretion of the trial judge and will not be reversed absent an abuse of discretion. Evidence is relevant if it tends to establish or make more or less probable some matter at issue. *Associate Management, Inc. v. E.D. Sauls Const. Co.*, 279 S.C. 219, 305 S.E. (2d) 236 (1983).

Initially, it should be noted that in his direct testimony, Collins, on his own, opened the door to the issue of bankruptcy. His claim of prejudice is without merit.

In any event, evidence of the bankruptcy negotiations was material to the issue of damages. In his testimony, Collins disputed the value of the machine contract at the Truck Stop and introduced evidence that both his contract and Kico's had been rejected by the bankruptcy court. The evidence of Collins' subsequent bid for the Truck Stop tends to show that the Truck Stop was a very valuable location, thereby bearing upon the amount of damages.

We find no abuse of discretion in allowing this evidence.

### IV. *Charge on Punitive Damages*

Collins contends that punitive damages should be set aside in that: (a) the trial court's charge was constitutionally defective; and (b) no posttrial review of the award was conducted as required by *Gamble v. Stevenson*, 305 S.C 104, 406 S.E. (2d) 350 (1991). We disagree.

A punitive damage charge survives constitutional scrutiny if:

[T]he trial court's jury instruction explains the nature, purpose and basis for the award; second, post-trial procedures enable the court to scrutinize the award; and, third, an appellate review process ensures that the award is reasonable and rational.

---

[3] Collins subsequently retracted this bid.

*Gamble v. Stevenson,* 305 S.C. 104, 110, 406 S.E. (2d) 350, 353-354 (1991) [applying *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111, S.Ct. 1032, 113 L.Ed. (2d) 1 (1991)].

The charge here, in instructing the jury on the purpose of punitive damages and the basis for such an award, complies with *Haslip* and *Gamble, supra.*

Moreover, the record clearly shows that the trial court reviewed both the actual and punitive damage awards and found them to be "well within reasonable limits." We affirm the award of punitive damages.

### V. *New Trial and JNOV Based upon Jury Verdict*

Finally, Collins contents that the trial court should have granted his motions for new trial and JNOV based upon the excessiveness of the jury verdict, both as to actual and punitive damages.

The award here is amply supported by the evidence of record, including testimony by Kico's expert witness. We find it not to be excessive. In a similar interference with contract case, the Court of Appeals affirmed a punitive damage award which was six times the actual damage award. *See Collins Music Co. v. Terry,* 303 S.C. 358, 400 S.E. (2d) 783 (S.C. App. 1991).

Collins' motions for new trial and JNOV were properly denied. *Graham v. Whitaker, supra.*

Affirmed.

FINNEY, TOAL and MOORE, JJ., concur

HARWELL, C.J., dissenting in separate opinion.

HARWELL, Chief Justice:

I respectfully dissent. In my opinion, the trial judge abused his discretion in admitting evidence of damages Kinard allegedly sustained after the date of Crosby's bankruptcy filing and in admitting evidence that Collins had bid on the truck stop property (Issues II and III).

### *Issue II*

According to the majority, Kinard was entitled to offer evidence of damages he claims to have suffered beyond the date Crosby filed for bankruptcy. I disagree.

After Crosby petitioned for relief under the bankruptcy code, the trustee of his estate possessed the authority to assume or reject existing executory contracts pursuant to 11 U.S.C. § 365(a) (1993). The trustee rejected both Crosby's contract with Collins and any contract formerly existing between Crosby and Kinard (the Kico contract).

The effect of rejection is that a breach is deemed to exist which in the ordinary case will give rise to a claim for damages. 2 *Collier on Bankruptcy*, ¶ 365.08 (1992). Rejection of a contract constitutes a breach occurring after the commencement of a bankruptcy. Section 365(g) of the bankruptcy code preserves the rights of a party to a contract as a creditor under 11 U.S.C. § 502(g) (1993) by allowing claims arising from the rejection of an executory contract under section 365(a) the same as if the claim had arisen before the date of filing bankruptcy petition. Once the trustee rejected the executory contracts, the Kico contract became defunct and Kinard was relegated to the status of a general unsecured creditor possessing a claim for breach. This is the identical position in which he would have been had Collins not interfered with the Kico contract. Under these facts, I believe any harm suffered by Kinard arising out of Collins's allegedly tortious acts had to have terminated at this point in time.

Moreover, the record does not support Kinard's claim that he sustained damages beyond the date of the bankruptcy filing. A plaintiff seeking to recover lost profits resulting from intentional interference with a contract must demonstrate (1) that it is reasonably certain that the profits would have been realized but for the tort; and (2) that such lost profits can be ascertained and measured from the evidence produced with reasonable certainty. *Collins Music Co. v. Ingram*, 292 S.C. 537, 357 S.E. (2d) 484 (Ct. App. 1987). It is impossible for Kinard to establish with reasonable certainty that his machines would have remained at the truck stop after rejection of the Kico contract "but for" Collins's allegedly tortious acts. Even had Kinard's machines remained on the site, they would have been removable at will. It is beyond speculation to adduce the length of time the machines would have remained at the truck stop under these circumstances. In my view, the post-petition lost profits claimed by Kinard are nether ascertainable nor measurable.

The inequitable consequence of the admission of the post-petition evidence could have been that Kinard would have recovered greater actual damages from Collins for tortious interference with the contract that he could have recovered from the unsecured bankruptcy claim. As much as I am concerned with the majority's untenable position that the evidence regarding post-petition lost profits presented by Kinard was proper, I agree that Collins was not prejudiced. The jury wisely declined to award damages beyond the time of the bankruptcy filing. Accordingly, I would affirm this issue.

### Issue III

As an initial matter, I disagree with the majority that Collins "opened the door" to this issue. The admissibility of evidence regarding Crosby's bankruptcy and Collins's bid had been argued to the trial judge during counsel's pretrial motions. However, the trial judge declined to make a ruling regarding this issues prior to trial.

Collins mentioned that Crosby was in bankruptcy during cross-examination. When Kinard's attorney attempted to pursue the topic, Collins's attorney objected, and the trial judge excused the jury in order to take up "the matter that we talked about. . . ." After argument, the trial judge ruled that evidence regarding Crosby's bankruptcy and Collin's bid for the truck stop property was admissible. The trial judge could and should have limited the evidence solely to the fact that Crosby had petitioned for relief under the bankruptcy code.

According to the majority, evidence that Collins bid on the truck stop property was material to the issue of damages. I disagree.

Collins disputed the value of Kinard's *machine* contract with Crosby. Collins avowed he never earned the money from his machines that Kinard claimed to have accumulated prior to the alleged interference with the contract. The evidence of Collins's bid on the truck stop property was completely irrelevant to the damages Kinard allegedly sustained as the result of Collin's intentional interference with Kico contract. In fact, Kinard's own expert discerned no relation between Kinard's alleged damages and Collin's bid on the truck stop; instead, the expert relied principally on Kinard's weekly receipts for 1988 to calculate the lost profits allegedly sustained by Kinard.

The admission of this irrelevant, highly prejudicial evidence tainted the jury's impartiality, as is apparent from the jury's attempt to apportion punitive damages among Crosby ($70,000), Collins ($235,000), and Collins Coin ($139, 215.50.[1] I would reverse and remand for a new trial.

---

[1] The trial judge subsequently instructed the jury to return a single verdict based on the joint and several liability of the defendants.