642 S.E.2d 726

**ELDECO, INC., Appellant,**

v.

**CHARLESTON COUNTY SCHOOL DISTRICT, Mt. Pleasant Mechanical, Inc. and Beers Skanska, Inc. n/k/a Skanska USA Building, Inc., Defendants,**

**Of Whom Charleston County School District and Beers Skanska, Inc. n/k/a Skanska USA Building, Inc. are Respondents.**

No. 26280.

Supreme Court of South Carolina.

Heard Jan. 31, 2007.

Decided March 5, 2007.

Frank M. Cisa, of Cisa & Dodds, of Mt. Pleasant, for Appellant.

C. Mitchell Brown, of Columbia, Ryan A. Earhart, of Charleston, and Christopher J. Blake, of Raleigh, all of Nelson Mullins Riley & Scarborough, for Respondent Beers Skanska, Inc. n/k/a Skanska USA Building, Inc.

H. Brewton Hagood, of Rosen Rosen & Hagood, of Charleston for Respondent Charleston County School District.

Chief Justice TOAL.

This appeal arises out of a contract dispute between Appellant Eldeco, Inc. ("Eldeco") and Respondents Charleston County School District ("CCSD") and Skanska USA Building, Inc. ("Skanska")[1]. Eldeco alleged that Skanska breached the parties' contract by failing to award certain electrical work in a new school building to Eldeco. Eldeco also alleged that CCSD intentionally interfered in the contractual relationship between Eldeco and Skanska. The trial court found in favor of Skanska and CCSD. Eldeco appeals and we affirm.

## FACTUAL/PROCEDURAL BACKGROUND

CCSD began construction of a new high school building ("the Project") in Mt. Pleasant, South Carolina in 2002. Skanska was the general contractor for the Project and hired Eldeco as an electrical subcontractor. At the time the parties entered into their respective contracts, the Project called for the construction of the school building as specified in the contract documents, which included an unfinished area for vocational training.

After construction of the Project began, CCSD decided to complete the vocational training area ("Culinary Arts Upfit") and add additional classroom space on either side of the school building ("Classroom Additions"). CCSD asked Skanska to provide a pricing estimate for the Culinary Arts Upfit and the Classroom Additions. As part of the pricing estimate, Skanska asked Eldeco to provide an estimate for the electrical work required for the Culinary Arts Upfit and the Classroom Additions. Eldeco submitted an estimate of $442,000.00.

Following the school board's approval for the additional work, CCSD formally requested pricing from Skanska. Skanska submitted its formal pricing quote which included Eldeco's official price for the Classroom Additions electrical work in the amount of $881,855.94. CCSD objected to the

---

1. Skanska USA Building, Inc. was formerly known as Beers Skanska, Inc.

adjusted price, and Eldeco eventually lowered the price to $720,000.00. Eldeco also submitted a pricing quote for the Culinary Arts Upfit electrical work of $248,311.76. At the request of CCSD, Skanska obtained pricing from another electrical contractor. Mt. Pleasant Mechanical submitted a price for the Classroom Additions in the amount of $348,812.00 and for the Culinary Arts Upfit in the amount of $229,340.00. Upon instructions from CCSD, Skanska subcontracted with Mt. Pleasant Mechanical to perform the additional electrical work.

Eldeco filed suit against Mt. Pleasant Mechanical,[2] Skanska, and CCSD. Eldeco sought recovery against Skanska for breach of contract on the basis of Skanska's failure to award Eldeco the electrical work in the Classroom Additions and the Culinary Arts Upfit.[3] Eldeco sought recovery against CCSD for tortious interference with contractual relations and intentional interference with prospective contractual relations. As grounds for these claims, Eldeco alleged that CCSD interfered with Eldeco's contract with Skanska by instructing Skanska to hire Mt. Pleasant Mechanical, Inc. for the additional electrical work.

A jury trial began in April 2005. At the conclusion of Eldeco's case, the trial judge directed a verdict in favor of CCSD. At the conclusion of all evidence, the trial judge denied Skanska's motion for directed verdict. At that point, the parties agreed to dismiss the jury and allow the trial court to determine whether the term "Work" as defined in the contract documents included the Classroom Additions and Culinary Arts Upfit. According to their agreement, if the trial judge determined that the Classroom Additions and Culinary Arts Upfit were within the definition of "Work," the trial court would award damages to Eldeco in the amount of $120,270.00. However, if the additional work fell outside of the definition, no damages would be awarded.

---

**2.** Mt. Pleasant Mechanical, Inc. is not involved in this appeal. The company filed for bankruptcy protection and thus, the pending action was stayed.

**3.** Eldeco also sought recovery against Skanska for violation of the Unfair Trade Practices Act. However, the trial court granted Skanska's motion for Summary Judgment, and that ruling is not implicated in this appeal.

The trial court ultimately concluded that the definition of "Work" did not include the Classroom Additions and Culinary Arts Upfit. Accordingly, no damages were awarded. Eldeco appealed, and this Court certified the case from the court of appeals pursuant to Rule 204(b), SCACR. Eldeco raises the following issues for review:

I. Did the trial court err in finding the Classroom Additions and Culinary Arts Upfit were not included in the definition of "Work" as provided in the contract documents?

II. Did the trial court err in directing a verdict in favor of CCSD as to Eldeco's tort causes of action?

## LAW/ANALYSIS

### I. Eldeco's Claim Against Skanska

Eldeco argues the trial court erred in finding the Classroom Additions and Culinary Arts Upfit were not included in the definition of "Work" as provided in the contract documents. We disagree.

A cause of action for breach of contract seeking money damages is an action at law. *South Carolina Fed. Sav. Bank v. Thornton–Crosby Dev. Co., Inc.,* 310 S.C. 232, 235, 423 S.E.2d 114, 116 (1992). "In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judge's findings." *Townes Assoc. Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

The contract between CCSD and Skanska provided:

1.1.3  THE WORK

The term "Work" means the construction and services required by the Contract Documents, whether completed or partially completed, and includes all other labor, materials, equipment and services provided or to be provided by the Contractor to fulfill the Contractor's obligations. The Work may constitute the whole or a part of the Project.

1.1.4  THE PROJECT

The Project is the total construction of which the Work performed under the Contract Documents may be the whole or a part and which may include construction by other Contractors and by the Owner's own forces including persons or entities under separate contracts not administered by the Construction Manager.

6.1.1 OWNER'S RIGHT TO PERFORM CONSTRUCTION WITH OWN FORCES AND TO AWARD OTHER CONTRACTS

The Owner reserves the right to perform construction or operations related to the Project with the Owner's own forces, which include persons or entities under separate contracts not administered by the Construction Manager. The Owner further reserves the right to award other contracts in connection with other portions of the Project or other construction or operations on the site under Conditions of the Contract identical or substantially similar....

The subcontract between Skanska and Eldeco provided:

Article 1: Subcontractor, as an independent contractor employed by Contractor, agrees to provide and to furnish all labor, materials, scaffolding, equipment, systems, machinery, tools, apparatus, transportation, shop drawings, samples and submittals necessary to provide, furnish and complete the following Work, all to be performed in connection with the above-described Project, and in accordance with the following:

Article 2: The Contract Documents for this Subcontract consist of this Agreement and any exhibits or attachments hereto, the Agreement between the Owner and Contractor for the above referenced Project, all conditions to the Agreement between the Owner and Contractor (General, Supplementary and any other Coditions), all Drawings, Specifications, and Contract Documents referenced in that Agreement, along with Addenda and modifications to that Agreement.

With respect to its Work, Subcontractor agrees to be bound to the Contractor by all of the terms of the agreement between the Contractor and the Owner (except for the payment provisions) and the Contract documents thereto, and assumes toward the Contractor and the Owner all the

obligations and responsibilities that the Contractor by those instruments assumes toward the Owner.

In its order, the trial court found that the Classroom Additions and the Culinary Arts Upfit were not included in the definition of the "Work" as provided in Article 1 of Skanksa's subcontract with Eldeco or the definition of the "Work" as described in Paragraph 1.1.3 of Skanksa's contract with CCSD because the additional work was outside the scope of the contract documents.

Eldeco argues that the trial court's finding was unreasonable because the definition of "Work" included changes to the work pursuant to a "Change Order" or a "Construction Change Directive." [4] According to Eldeco, the Classroom Additions and the Culinary Arts Upfit were merely changes in the Work that should have occurred under a Change Order or Construction Change Directive. In support of this contention, Eldeco focuses on the fact that it had performed some 109 Change Orders during the course of construction of the Project, and that the process used for the Classroom Additions and Culinary Arts Upfit was identical to the process used for the other Change Orders. Additionally, Eldeco contends that it was entitled to do all electrical work on the Project which was initiated through a Change Order or Construction Change Directive and administered by the Construction Manager.

Contrarily, Skanska contends that the trial court's decision was reasonable in light of the evidence presented at trial. First, Skanska contended that the contract documents delineated only the work that Skanska was required to complete and, in fact, did not provide a right or obligation for Skanska to perform work like the Classroom Additions and Culinary Arts Upfit which exceeded the scope of Skanska's original contract as general contractor. Second, Skanska argued that Paragraph 6.1.1 of their contract with CCSD specifically re-

4. Both a Change Order and a Construction Change Directive are defined in Article 7 of the contract between Skanska and CCSD. Essentially, a Change Order is a written instrument which authorizes changes in the Work and is used when all parties are in agreement as to the terms of the changes in the Work. A Construction Change Directive is a written instrument similar to a Change Order, however, this document is used in the absence of total agreement on the terms of the Change Order.

served the right of CCSD to use other contractors for the completion of the Project. Finally, Skanska presented several witnesses who testified that the additional work was outside the scope of the contract.

We find that the record contains sufficient evidence upon which the trial court could have found that the Classroom Additions and Culinary Arts Upfit were not included in the definition of "Work." Article 1 of the subcontract between Skanska and Eldeco clearly defines the scope of Work according to the listed specifications, which do not include the Classroom Additions or the Culinary Arts Upfit as modified. Bolstering the testimony of its witnesses, Skanska introduced Exhibits 22–24 which indicated that Skanska and CCSD utilized supplementary contracts, and not Change Orders, for the additional work. Moreover, because the general contract between Skanska and CCSD provided that any agreement between the contractor and subcontractor was subject to the provisions of the general contract, Eldeco's subcontract with Skanska could not have expanded Eldeco's rights as to the Work on the Project. As Skanska demonstrated, this additional work was outside the scope of the general contract between Skanska and CCSD.

Accordingly, the trial court did not err in finding the Classroom Additions and Culinary Arts Upfit were outside the scope of the definition of "Work" as provided in the contract documents.

## II. Eldeco's Claims Against CCSD

Eldeco argues the trial court erred in directing a verdict in favor of CCSD as to Eldeco's causes of action for tortious interference with contractual relations and intentional interference with prospective contractual relations because CCSD was entitled to immunity under the South Carolina Tort Claims Act ("Tort Claims Act"). We agree that the trial court erroneously applied the Tort Claims Act. However, we affirm the trial court's ruling because Eldeco's claims fail as a matter of law.

### A. Immunity Based on an "Intent to Harm"

Eldeco contends that the trial court erred by finding that S.C.Code Ann. § 15–78–60(17) (2005) provided immunity

to CCSD for the claims of tortious interference with contractual relations and intentional interference with prospective contractual relations. We agree.

In ruling on a motion for directed verdict, the trial court is required to view the evidence and the inferences that reasonably can be drawn therefrom in the light most favorable to the party opposing the motions. *Steinke v. South Carolina Dep't of Labor, Licensing, and Regulation,* 336 S.C. 373, 386, 520 S.E.2d 142, 148 (1999). This Court will reverse only where there is no evidence to support the trial court's ruling or where the ruling was controlled by an error of law. *Id.*

To establish a cause of action for tortious interference with contractual relations, a plaintiff must show: 1) the existence of a contract; 2) knowledge of the contract; 3) intentional procurement of its breach; 4) the absence of justification; and 5) resulting damages. *Kinard v. Crosby,* 315 S.C. 237, 240, 433 S.E.2d 835, 837 (1993). To establish a cause of action for intentional interference with prospective contractual relations, a plaintiff must show: 1) intentional interference with prospective contractual relations; 2) for an improper purpose or by improper methods; and 3) resulting in injury. *Crandall Corp. v. Navistar Int'l Transp. Corp.,* 302 S.C. 265, 266, 395 S.E.2d 179, 180 (1990).

The Tort Claims Act provides that "the State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages contained herein." S.C.Code Ann. § 15–78–40 (2005). The provision containing the exceptions to the waiver of immunity provides in relevant part, "[a] governmental entity is not liable for a loss resulting from ... employee conduct outside the scope of his official duties or which constitutes actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C.Code Ann. § 15–78–60(17).

During the discussion of CCSD's directed verdict motion, the trial court found that "intentional procurement" and "intentional interference" necessarily involves an "intent to harm." Eldeco asserted that it did not have to prove an

"intent to harm" to succeed on the merits of its claims against CCSD. At the conclusion of arguments on the motion, the trial court directed a verdict in favor of CCSD, primarily based on § 15–78–60(17).

We hold that this was error. None of the elements required for either cause of action, as clearly shown above, include "intent to harm." Although it is true that harm may result from an intentional interference with existing or prospective contractual relations, it is not necessary that the interfering party intend such harm. Instead, it is only necessary that they intend to interfere with either an existing contract or intend to interfere with a prospective contract.[5]

Accordingly, the trial court erred in directing a verdict in favor of CCSD based on the "intent to harm" exception to the waiver of immunity provided in the Tort Claims Act.

### B. The Merits of Eldeco's Claims Against CCSD

CCSD argues as an additional sustaining ground that Eldeco's claims against CCSD fail as a matter of law. CCSD argues that the claims against CCSD are inextricably tied to the disposition of Eldeco's claim against Skanska. We agree.

An essential element to the cause of action for tortious interference with contractual relations requires the intentional procurement of the contract's breach. *Kinard,* 315 S.C. at 240, 433 S.E.2d at 837. Where there is no breach of the contract, there can be no recovery. *First Union Mortg.*

---

5. The concept of "intent to harm" is analogous to the concept of "malicious intent," which courts have previously interjected into the analyses of claims for intentional interference with contractual relations and intentional interference with prospective contractual relations. However, consideration of these concepts in this context is often an error, due in large part to the historical use of the term "malicious" to describe the idea that the intent must generally be improper in some way. Therefore, as modern courts have addressed these causes of action, the distorted notion of "malicious intent" has been removed, and the elements of these torts have been clarified as specifically requiring the intent to interfere for an improper purpose rather than a motive generally grounded in some sort of spite or ill-will towards the plaintiff. *See* 2 Dan B. Dobbs, *The Law of Torts* § 446 (2001 & Supp.2006); *and* Prosser and Keeton, *The Law of Torts* §§ 129–130 (5th ed.1984).

*Corp. v. Thomas,* 317 S.C. 63, 73, 451 S.E.2d 907, 913 (Ct.App. 1994). Furthermore, an essential element to the cause of action for intentional interference with prospective contractual relations requires that the interference be for an improper purpose or by improper methods. "Generally, there can be no finding of intentional interference with prospective contractual relations if there is no evidence to suggest any purpose or motive by the defendant other than the proper pursuit of its own contractual rights with a third party." *Southern Contracting, Inc. v. H.C. Brown Constr. Co.,* 317 S.C. 95, 102, 450 S.E.2d 602, 606 (Ct.App.1994).

Because we affirm the trial court's finding that the contract documents did not include the Classroom Additions and Culinary Arts Upfit in the definition of Work, we find that Skanska did not breach its contract with Eldeco. Eldeco did not have any contractual rights to perform the additional work on the Project. In the absence of a breach of a contract, Eldeco cannot prove the required elements of its cause of action for tortious interference with contractual relations. Additionally, we find that the contract between Skanska and CCSD preserved CCSD's right to conduct other Work on the Project with its own or other forces. Therefore, CCSD acted in pursuit of its own contractual rights, and Eldeco cannot prevail on its claim against CCSD for intentional interference with prospective contractual relations.

Accordingly, we affirm the trial court's ruling in favor of CCSD based on the failure of Eldeco's claims as a matter of law.

### CONCLUSION

For the foregoing reasons, we affirm the trial court's decision.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.