# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Curt O. Hall, Plaintiff,

v.

UBS Financial Services Inc. and Mary Lucy Reid, Defendants.

Appellate Case No. 2020-001195

---

## CERTIFIED QUESTION

---

ON CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF SOUTH CAROLINA
Timothy M. Cain, United States District Judge

---

Opinion No. 28068
Heard April 14, 2021 – Filed December 1, 2021

---

## CERTIFIED QUESTIONS ANSWERED

---

Townes B. Johnson III, of Townes B. Johnson III, LLC, of Greenville, for Plaintiff.

Ashley P. Cuttino and Evelyn A. Norton, of Ogletree Deakins Nash Smoak & Stewart, PC, of Greenville, for Defendants.

---

**JUSTICE JAMES:** We accepted three certified questions from the United States District Court for the District of South Carolina. In this case, Curt Hall sued UBS

Financial Services Inc. (UBS) (his former employer) and Mary Lucy Reid, a former co-worker, seeking to hold them liable for damages he allegedly incurred when he was fired by UBS. Hall's claims against UBS include one for breach of the implied covenant of good faith and fair dealing, and Hall's claims against Reid include one for tortious interference with contractual relations. The certified questions concern the nature of Hall's at-will employment and the viability of Hall's causes of action in the employment at-will context. Hall does not concede he was an at-will employee.

The certified questions are as follows:

I. Are terminable-at-will employment relationships contractual in nature as a matter of law?

II. Does the implied covenant of good faith and fair dealing arise in the context of terminable-at-will employment relationships, and can an employer's termination of an at-will employee constitute a breach of the relationship such that it may give rise to a claim by the former employee against the employer for breach of the implied covenant of good faith and fair dealing?

III. Can an employer's termination of an at-will employee, which results from a third-party employee's report to the employer, constitute a breach of the relationship such that it may give rise to a claim by the former employee against the third-party employee for tortious interference with a contractual relationship?

## Background

In this section, we recite Hall's allegations against UBS and Reid as they are set forth in the district court's certification order. We express no opinion as to whether they are true. Hall was the manager of the Greenville branch of UBS. On September 1, 2017, Hall organized an employee happy hour which several UBS employees, including Reid, attended.[1] Throughout the event, Reid mentioned she was having issues with her boyfriend and was scared to go home. Hall offered to let Reid stay at his home for the evening. At the end of the happy hour, Hall invited everyone still present to dinner at a nearby restaurant, but only Reid and one of her friends joined him. After dinner, Reid and her friend gave Hall a ride home, with Reid joining Hall in the backseat while her friend drove. When they arrived at his home, Hall again asked Reid if she would be alright and she said she would be. Hall

---

[1] During oral argument, counsel for Reid referred to Reid as Hall's subordinate. This alleged fact is not in the certification order, and it has no bearing upon our answers to the certified questions.

then gave Reid a "European-style consolatory cheek kiss" and exited the vehicle. Later that evening, Hall texted Reid to confirm she was okay. Hall repeated his offer for Reid to stay with him and told her he was outside his home with his dog. Reid responded to Hall's comment about his dog but did not respond to Hall's offer for her to stay with him.[2]

Reid reported her version of the events of the evening to UBS's human resources department (HR). HR questioned Hall about the evening, and Hall explained his version of events. According to Hall, Reid fabricated certain events of the evening and also fabricated Hall's general advances towards her and Hall's relationships with other employees in the Greenville office. UBS fired Hall a few weeks after Reid's report. This action followed. Pertinent to the certified questions are Hall's cause of action against UBS for breach of the implied covenant of good faith and fair dealing and Hall's cause of action against Reid for tortious interference with contractual relations.

## Discussion

In South Carolina, employment is presumed to be at will. *Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 309, 698 S.E.2d 773, 778 (2010). In an at-will employment relationship, either party may terminate employment "at any time, for any reason or for no reason at all" without incurring liability. *Prescott v. Farmers Tel. Coop., Inc.*, 335 S.C. 330, 334, 516 S.E.2d 923, 925 (1999); *see also Culler v. Blue Ridge Elec. Coop., Inc.*, 309 S.C. 243, 245, 422 S.E.2d 91, 92 (1992) ("The doctrine in its pure form allows an employer to discharge an employee without incurring liability for good reason, no reason, or bad reason."). "The termination of an at-will employee normally does not give rise to a cause of action for breach of contract." *Prescott*, 335 S.C. at 334-35, 516 S.E.2d at 925. We have recognized "exceptions" to employment at will that can apply to impose liability on an employer who terminates an at-will employee.[3] We answer the district court's questions under the assumption that no exception applies.

---

[2] During oral argument, Hall's counsel stated Hall's wife and child were home with Hall. This alleged fact is not in the certification order, and it has no bearing upon our answers to the certified questions.

[3] *See, e.g.*, *Conner v. City of Forest Acres*, 363 S.C. 460, 471-74, 611 S.E.2d 905, 911-12 (2005) (explaining an employer may not discharge an employee in violation of procedures set forth in employee handbook); *Barron v. Labor Finders of S.C.*,

**I. Are terminable-at-will employment relationships contractual in nature as a matter of law?**

In their brief, Defendants begin their argument on this point by stating at-will employment relationships in South Carolina "do not allow for a cause of action to be brought by an employee against an employer on matters that arise out of termination of the at-will employment relationship." That is a correct statement of the law, but it misses the point of the district court's question. It appears Defendants have conflated the question of whether the at-will relationship is contractual with the question of whether termination of an at-will employee gives rise to a cause of action for breach of contract. As we will explain, we answer "yes" to the question put to us by the district court, but we emphasize that this "yes" answer does not light a path to a viable breach of contract action by the terminated employee against the employer.

In their brief, Defendants state that "[i]t has long been held that an at-will employee does not have a contractual relationship with their employer" and cite *Orsini v. Trojan Steel Corp.*, 219 S.C. 272, 64 S.E.2d 878 (1951), for that proposition. *Orsini* stands for no such proposition. In *Orsini*, we stated "[t]he general rule is that under ordinary circumstances a <u>contract</u> to furnish employment permanently, or so long as the employee's services shall be properly performed, or for a similar indefinite period, is no more than an indefinite hiring, terminable at the will of either party, and is therefore unenforcible [sic] as to its duration." *Id.* at 276, 64 S.E.2d at 879 (emphasis added). *Orsini* involved an oral employment agreement between an employer and an employee. We simply held that when the hiring is for an indefinite period, the employment is at will and the contract is unenforceable as to its duration. We did not hold the at-will employment relationship is non-contractual. In fact, we specifically referred to the relationship as a contract.

In *Prescott*, we again referred to the at-will employment arrangement as a "contract." 335 S.C. at 334, 516 S.E.2d at 925 ("[A] contract for permanent employment, so long as it is satisfactorily performed which is not supported by any consideration other than the obligation or service to be performed on the one hand and wages to be paid on the other, is terminable at the pleasure of either party." (quoting *Shealy v. Fowler*, 182 S.C. 81, 87, 188 S.E. 499, 502 (1936))). In other decisions, however, we have suggested a contract arises only when parties to an at-will employment relationship enter into a contract altering that relationship. *See*

393 S.C. 609, 614, 713 S.E.2d 634, 636-37 (2011) (stating at-will employee may not be discharged in violation of a clear mandate of public policy).

*Mathis*, 389 S.C. at 309, 698 S.E.2d at 778 ("[E]mployment at-will is presumed absent the creation of a specific contract of employment."); *Barron v. Labor Finders of S.C.*, 393 S.C. 609, 614, 713 S.E.2d 634, 636 (2011). In fact, the decisions of our appellate courts have seemingly contradicted each other on this issue when discussing the viability of claims for breach of the implied covenant of good faith and fair dealing and tortious interference with contractual relations—the subjects of the second and third certified questions. *Compare Allegro, Inc. v. Scully*, 418 S.C. 24, 35, 791 S.E.2d 140, 146 (2016) ("[A]bsent some alteration in at-will employment status, there is no contract into which we could imply [the implied covenant of good faith and fair dealing]."), *with Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 283 S.C. 155, 163, 321 S.E.2d 602, 607 (Ct. App. 1984) ("[A] contract terminable at will is a contract upon which an action for [tortious interference with contractual relations] may be brought."), *quashed in part*, 287 S.C. 190, 336 S.E.2d 472 (1985).

We agree with Hall that the answer to this certified question lies in general contract law. This Court has applied general contract law in determining whether contracts exist in the employment context. *See Prescott*, 335 S.C. at 336, 516 S.E.2d at 926 ("[T]o prove the existence of a definite contract of employment, the employee must establish all of the elements of a contract."). The *Prescott* Court also noted "[m]ost employment agreements are unilateral," and explained the elements of a unilateral contract are: "(1) a specific offer, (2) communication of the offer to the employee, and (3) performance of job duties in reliance on the offer." *Id.* (footnote omitted). We agree with the majority of jurisdictions that have addressed this issue, and we hold those elements are present in every at-will employment arrangement.

In *Spriggs v. Diamond Auto Glass*, the Fourth Circuit applied general contract law and held the typical at-will relationship is contractual in nature:

> [The employer] had offered, either expressly or implicitly, to pay [the employee] if he would perform the duties of customer service representative, and [the employee] accepted that offer by beginning work. [The employee's] performance of the assigned job duties was consideration exchanged for [the employer's] promise to pay. The parties' actions thus created a contractual relationship.

165 F.3d 1015, 1018 (4th Cir. 1999). A wide range of authority supports the Fourth Circuit's conclusion. *See Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984) ("[T]he contract of employment may be written or oral, formal or informal; an informal contract of employment may arise by the simple act of handing a job applicant a shovel and providing a workplace."); *Lake Land Emp't Grp. of Akron, LLC v. Columber*, 804 N.E.2d 27, 32 (Ohio 2004) ("At-will employment is contractual in

nature. . . . In such a relationship, the employee agrees to perform work under the direction and control of the employer, and the employer agrees to pay the employee at an agreed rate." (citation omitted)); *Darlington v. Gen. Elec.*, 504 A.2d 306, 309 (Pa. Super. Ct. 1986) ("Every employment relationship is also a contractual relationship. Even at-will employment is formed by contract."), *overruled on other grounds by Krajsa v. Keypunch, Inc.*, 622 A.2d 355 (Pa. Super. Ct. 1993); 82 Am. Jur. 2d *Wrongful Discharge* § 6 (2013) ("The employment relationship is a contractual one, and therefore, it has been said that even at-will employees have employment contracts." (footnotes and citations omitted)).

In decisions allowing at-will employees to bring actions against their employers under 42 U.S.C.A. § 1981 (2019), many courts have held at-will employment arrangements are contractual. That statute does not define "contract," but it guarantees to all persons in the United States the same rights related to the making, performance, modification, and termination of contracts as are enjoyed by white citizens. *Id.* § 1981(a), (b). Thus, to bring an action under section 1981, the employee must have a contract. *See Skinner v. Maritz, Inc.*, 253 F.3d 337, 341 n.2 (8th Cir. 2001) ("Section 1981 only requires that the employee have a 'contract.'"). In *Spriggs*, the Fourth Circuit noted, "[w]e have seen no indication that, when drafting [section 1981], Congress intended the term 'contract' to have any meaning other than its ordinary one." 165 F.3d at 1018. At least six federal circuit courts have held the at-will employment relationship is contractual. *See id.* at 1018-19 (recognizing "an at-will employment relationship is contractual" and allowing a discharged at-will employee to bring a claim under section 1981); *Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258 (2d Cir. 2000) (same); *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048 (5th Cir. 1998) (same); *Walker v. Abbott Labs.*, 340 F.3d 471 (7th Cir. 2003) (same); *Turner v. Ark. Ins. Dep't*, 297 F.3d 751 (8th Cir. 2002); *Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999) (same).

In *Sellers v. South Carolina Autism Society, Inc.*, 861 F. Supp. 2d 692 (D.S.C. 2012), the district court for South Carolina ruled at-will employees in South Carolina can bring section 1981 claims because at-will employment is contractual under South Carolina law. *Id.* at 697 ("[T]he court finds nothing so unique about South Carolina's employment at-will doctrine that it should be exempt from what appears to be the unanimous view of all federal appellate courts which have addressed application of Section 1981 to various states' at-will employment doctrines."). The *Sellers* court undertook a well-reasoned examination of South Carolina law and determined "at-will employment in South Carolina is contractual in nature and may support a claim under Section 1981." *Id.* at 697-98.

The same result is warranted outside the context of section 1981. All at-will employment relationships, whether they are memorialized in a written contract stipulating the at-will nature of the employment or orally formed simply out of circumstance, are contractual relationships. When an employer offers to pay an employee to perform a service for a price and the employee performs that service, a contract is formed. Of course, our recognition that at-will relationships are contractual does not alter the established rule allowing an employer to discharge an at-will employee <u>for any reason</u> without incurring liability. That is because under South Carolina law, the right to fire the employee at any time and for any reason is an integral term of the at-will contract. We answer the first certified question "yes."

**II. Does the implied covenant of good faith and fair dealing arise in the context of terminable-at-will employment relationships, and can an employer's termination of an at-will employee constitute a breach of the relationship such that it may give rise to a claim by the former employee against the employer for breach of the implied covenant of good faith and fair dealing?**

Question II is a two-part question. Part A asks if the implied covenant of good faith and fair dealing (the covenant) exists in at-will employment relationships. Part B asks if an employer's termination of an at-will employee can give rise to a claim by the former employee against the employer for breach of the covenant. We answer part A "yes," and we answer part B "no."

**A. Does the covenant arise in at-will employment relationships?**

The answer to part A lies in the principle that "[t]here exists in every contract an implied covenant of good faith and fair dealing." *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995). The at-will employment relationship is contractual, so it appears we should easily conclude the implied covenant of good faith and fair dealing is a term of the at-will employment contract. However, as Defendants note, both this Court and the court of appeals have concluded the covenant does not arise in at-will employment relationships. *See Allegro*, 418 S.C. at 35, 791 S.E.2d at 146 ("[A]bsent some alteration in at-will employment status, there is no contract into which we could imply [the implied covenant of good faith and fair dealing]."); *Williams v. Riedman*, 339 S.C. 251, 274, 529 S.E.2d 28, 40 (Ct. App. 2000) ("[W]e have declined to apply [the covenant of good faith and fair dealing] to the employment at-will situation where no contract exists."); *Keiger v. Citgo, Coastal Petroleum, Inc.*, 326 S.C. 369, 374, 482 S.E.2d 792, 794 (Ct. App. 1997) ("[T]he implied covenant of good faith and fair dealing that is implied in every contract applies to employment contracts *that alter* the at-

will employment status." (emphasis added)). As *Allegro*, *Williams*, and *Keiger* demonstrate, the rationale for refusing to apply the covenant was that "no contract" exists in the pure at-will setting. However, in light of our answer to the first certified question, this rationale is no longer valid. The implied covenant of good faith and fair dealing exists in at-will employment contracts.

### B. Can an employer's termination of an at-will employee give rise to a claim by the former employee against the employer for breach of the implied covenant of good faith and fair dealing?

We first note this part of Question II suggests there is a cause of action for "breach of the implied covenant of good faith and fair dealing." The court of appeals has held that a claim for breach of the implied covenant of good faith and fair dealing is not a cause of action separate and distinct from a cause of action for breach of contract. *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 359 S.C. 467, 472-73, 597 S.E.2d 881, 884 (Ct. App. 2004). As we explained above, every contract includes the implied covenant of good faith and fair dealing. It is clear then that if a party to a contract believes another party to the contract has breached the implied covenant of good faith and fair dealing, the cause of action is simply one for breach of contract. With that clarification, we will address this part of Question II.

Our appellate courts have consistently applied the covenant of good faith and fair dealing "to protect the intentions of the parties to the contract." *Williams*, 339 S.C. at 273, 529 S.E.2d at 39. "In the absence of an express provision therefor, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made." *Id.* (quoting *Commercial Credit Corp v. Nelson Motors, Inc.*, 247 S.C. 360, 367, 147 S.E.2d 481, 484 (1966)). "[T]here is no breach of an implied covenant of good faith where a party to a contract has done what provisions of the contract expressly gave him the right to do." *Adams*, 320 S.C. at 277, 465 S.E.2d at 85. All at-will employment contracts contain a provision allowing the employer to discharge the at-will employee for "good reason, no reason, or bad reason" without incurring liability. *Culler*, 309 S.C. at 245, 422 S.E.2d at 92. It follows then that the implied covenant of good faith and fair dealing, while it exists in the at-will employment contract, does not infringe upon the employer's right to do what the contract allows him to do—terminate the employee for any reason. The employer's motive for firing the employee is immaterial, and the employer may fire the employee—even for a bad reason—without incurring liability for breach of the implied covenant of good faith and fair dealing.

We answer Question II in its entirety as follows: The implied covenant of good faith and fair dealing exists in an at-will employment contract; however, the employer's termination of the employee cannot form the basis of a claim that the employer breached the covenant of good faith and fair dealing.[4]

### III. Can an employer's termination of an at-will employee, which results from a third-party employee's report to the employer, constitute a breach of the relationship such that it may give rise to a claim by the former employee against the third-party employee for tortious interference with a contractual relationship?

We revise this question to read as follows: Can an employer's termination of an at-will employee, which results from a third-party employee's report to the employer, give rise to a claim by the terminated employee against the third-party employee for tortious interference with a contractual relationship, even when the termination itself was not a breach of the at-will contract? We revise the question because the threshold viability of the terminated at-will employee's tortious interference claim against the third-party employee does not depend upon whether the employer's termination of the employee was a breach of the at-will contract; instead, the threshold viability of the claim depends upon whether the third-party employee, without justification, made a report to the employer which induced the employer to terminate the at-will employee.

The district court has presented the narrow question of whether a third-party employee's interference can be actionable. The majority view across the country extends liability not only to third-party employees but also to any third party who intentionally and unjustifiably interferes with the at-will relationship. As we answer the district court's narrow question, we will also answer the broader question.

Almost forty years ago in *Todd*, the court of appeals recognized the viability of a discharged employee's claim against a third party for interference with a

---

[4] During oral argument, Hall stated his claim for breach of the implied covenant of good faith and fair dealing was not founded upon UBS firing him, but instead upon UBS's submission of a report detailing Hall's actions to the Financial Industry Regulatory Authority (FINRA). Since the record does not include Hall's complaint, we do not know what actions Hall alleged as the basis for his claim for breach of the implied covenant of good faith and fair dealing, and our answers to the district court's questions are based on the limited record before us. The district court can resolve any questions related to FINRA.

terminable-at-will employment contract.[5]  283 S.C. at 163-64, 321 S.E.2d at 607. The *Todd* court stated:

> We conclude, along with a majority of jurisdictions, that where a third party induces an employer to discharge an employee who is working under a contract terminable at will, but which employment would have continued indefinitely except for such interference, a cause of action arises in favor of the employee against the third person.

*Id.*  After holding the at-will employee's intentional interference claim was viable, the court of appeals ruled on the merits of his claim and held as a matter of law the third party did not induce the employer to fire the employee.

On certiorari, this Court quashed the portion of the court of appeals' decision upon the merits of the employee's interference claim and reinstated the jury verdict against the third-party "interferer," holding the court of appeals erred in "supplanting the jury's findings of fact with its own by ruling as a matter of law [the third party] did not intentionally interfere with Todd's employment contract."  287 S.C. at 191, 336 S.E.2d at 473.  However, we did not address the court of appeals' holding that the claim was viable in the first instance.  The court of appeals decided *Todd* in 1984, and, until now, we have not had the occasion to address the court of appeals' holding on the viability of the claim.

The elements of a tortious interference with contractual relations claim are: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of its breach; (4) the absence of justification; and (5) resulting damages."  *Eldeco, Inc. v. Charleston Cty. Sch. Dist.*, 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007).  "An essential element to the cause of action for tortious interference with contractual relations requires the intentional procurement of the contract's breach. . . . Where there is no breach of the contract, there can be no recovery."  *Id.* at 481, 642 S.E.2d at 732 (citations omitted).

Citing *Eldeco*, Reid argues (1) an employer's termination of an at-will employee is not a breach of the at-will contract because employers can terminate at-will employees for any reason, and (2) absent a breach, the tortious interference claim fails because one of the elements of the claim is the defendant's intentional

---

[5] Although the court of appeals in *Todd* referred to the terminated employee's claim as one for "intentional interference," the elements for intentional interference are the same as those for tortious interference with contractual relations.  283 S.C. at 163, 321 S.E.2d at 607.

procurement of a breach of contract. We agree with Reid there is no breach of contract when an employer fires an at-will employee. However, the absence of an underlying breach does not shield a third party from liability when she intentionally and unjustifiably procures the termination of an at-will employee. As we will explain, we conclude the court of appeals in *Todd* was correct, and we answer this question "yes."

The majority of jurisdictions addressing this issue have recognized a third party's intentional interference with a terminable-at-will contract gives rise to a cause of action for tortious interference with contractual relations, even when the termination of the contract is not a breach of the contract. In *Bochnowski v. Peoples Federal Savings & Loan Ass'n*, 571 N.E.2d 282 (Ind. 1991), the Supreme Court of Indiana overruled contrary Indiana precedent and recognized the right of an at-will employee to bring an action for tortious interference with a contract against a third party. The court held "[t]he parties in an employment at will relationship have no less of an interest in the integrity and security of their contract than do the parties in any other type of contractual relationship." *Id*. at 284. The court then noted "The United States Supreme Court recognized this as far back as 1915," and quoted the following passage:

> The fact that the employment is at the will of the parties, respectively, does not make it one at the will of others. The employee has manifest interest in the freedom of the employer to exercise his judgment without illegal interference or compulsion and, by the weight of authority, the unjustified interference of third persons is actionable although the employment is at will.

*Id*. (quoting *Truax v. Raich*, 239 U.S. 33, 38 (1915)). The *Bochnowski* court also stated:

> An employee with an at will employment contract must be able to expect that his continued employment depends on the will of his employer and not upon the whim of a third party interferer. We therefore conclude that a claim for tortious interference with an employment relationship can be maintained upon a contract terminable at will. The plaintiff bringing such an action, however, must be prepared to show that the defendant interferer acted intentionally and without a legitimate business purpose.

*Id*. at 285. A majority of jurisdictions follow the *Bochnowski* court's approach. *See, e.g.*, *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex. 1989) (holding "the

terminable-at-will status of a contract is no defense to an action for tortious interference with its performance"); *Levens v. Campbell*, 733 So. 2d 753, 760 (Miss. 1999) (stating "a claim for tortious interference with at-will contracts of employment is viable in this state"); *Hall v. Integon Life Ins. Co.*, 454 So. 2d 1338, 1344 (Ala. 1984) (explaining the cause of action is not defeated by the plaintiff's at-will status); *Tiernan v. Charleston Area Med. Ctr., Inc.*, 506 S.E.2d 578, 591 n.20 (W. Va. 1998) ("The existence of an at-will employment relationship does not insulate a defendant from liability for tortious interferences."); *Nordling v. N. States Power Co.*, 478 N.W.2d 498, 505 (Minn. 1991) ("[A] tortious interference claim will lie for an at-will employment agreement. The at-will employment subsists at the will of the employer and employee, not at the will of a third party meddler who wrongfully interferes with the contractual relations of others."); *Feaheny v. Caldwell*, 437 N.W.2d 358, 364 (Mich. Ct. App. 1989) ("[A]n at-will employee who enjoys the confidence of his or her employer has the right to expect that a third party will not wrongfully undermine the existing favorable relationship."), *overruled on other grounds by Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 706 N.W.2d 843 (Mich. Ct. App. 2005).

Of the foregoing decisions, all but *Hall v. Integon* relied in part upon section 766 of the Restatement (Second) of Torts (1979) in determining a claim may arise for tortious interference with a contract terminable at will. Section 766 states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Importantly, comment *g* to section 766 discusses application of the rule in the terminable-at-will contract setting, and explains that although a party to the contract may terminate the agreement without incurring liability, other individuals cannot interfere with the contract: "Until [the party to the contract] has so terminated it, the contract is valid and subsisting, and the defendant may not improperly interfere with it." In *Todd*, the court of appeals cited section 766 when discussing the viability of a claim for tortious interference with an at-will employment contract. 283 S.C. at 164, 321 S.E.2d at 607. Although the court of appeals did not discuss the "breach" requirement, the *Todd* decision listed the elements of an interference claim, including "intentional procurement of [the contract's] breach," immediately before holding the interference cause of action was viable in the at-will setting. *Id.* at 163, 321 S.E.2d at 607.

We now endorse the *Todd* court's recognition of the validity of a claim for third-party tortious interference with a terminable-at-will employment contract, and we hold the absence of an underlying breach by the terminating employer does not shield the third party from liability when she intentionally and unjustifiably procures the termination of an at-will employee. Therefore, we answer Question III, as modified, "yes."

## IV. Reid's additional arguments

Reid raises two arguments in which she asserts facts she contends should affect our answers to the district court's questions. First, Reid claims she was a party to Hall's at-will employment agreement with UBS and therefore cannot be held liable for inducing UBS to fire Hall. We and the court of appeals have recognized that a claim for tortious interference with contractual relations lies only against a third party, not a party to the contract. *Ross v. Life Ins. Co. of Va.*, 273 S.C. 764, 766, 259 S.E.2d 814, 815 (1979); *Threlkeld v. Christoph*, 280 S.C. 225, 227, 312 S.E.2d 14, 15 (Ct. App. 1984) ("[A]n action for tortious interference protects the property rights of the parties to a contract against unlawful interference by third parties. . . . [I]t does not protect a party to a contract from actions of the other party."). Second, in an argument directed at the fourth element of a tortious interference claim, Reid contends she cannot be held liable for allegedly interfering with Hall's contract because she was justified in reporting Hall's unwanted sexual advances to UBS or otherwise enjoyed a qualified privilege in doing so.

Resolution of these two issues depends upon an evaluation of facts to be developed as the case progresses. Since the district court has not asked us to address factual questions, we will not address these two issues.

## Conclusion

We answer the first question "yes." We answer part A of the second certified question "yes," and we answer part B of that question "no." We answer the third certified question, as modified, "yes," and we have added that potential liability extends to third parties who are not fellow employees of the terminated employee.

We have answered all questions under the assumption that no exception to the doctrine of at-will employment applies. In addition, our answers to these questions do not alter the established rule that, as long as an exception does not apply, an employer may terminate an at-will employee for any reason without incurring liability.

**CERTIFIED QUESTIONS ANSWERED**.

**BEATTY, C.J., KITTREDGE and HEARN, JJ., concur. FEW, J., concurring in part and dissenting in part in a separate opinion.**

**JUSTICE FEW:** I appreciate the majority's very fine explanation of our answers to the district court's first and second questions. I completely agree with the majority's answer and explanation as to the first question. As to the second question, I agree with the answers given, but I would explain the answer to the second part of the question in slightly different terms. The manner in which I suggest we explain our answer to the second part of the second question—in my opinion—requires a different answer to the third question than the answer given by the majority.

I begin with the second part of the second question. Courts will find a term implied in a contract when the circumstances surrounding the relationship between the parties clearly indicate the term was intended by the parties as a part of their agreement, even though the term is not specifically expressed in the contract. We recognized this in *Commercial Credit Corp. v. Nelson Motors, Inc.*, 247 S.C. 360, 147 S.E.2d 481 (1966), when we wrote, "The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just [women or] men they ought to have made." 247 S.C. at 367, 147 S.E.2d at 484 (quoting 17 AM. JUR. 2d. *Contracts* § 255 (1964)).

Presuming, therefore, honest, fair, and just women and men intend to act—and expect others to act—in good faith, we have repeatedly held the law implies into every contract a promise between the parties to act in good faith in executing the contract. *See, e.g.*, *Adams v. G.J. Creel & Sons, Inc.*, 320 S.C. 274, 277, 465 S.E.2d 84, 85 (1995) ("There exists in every contract an implied covenant of good faith and fair dealing." (citing *Tharpe v. G. E. Moore Co.*, 254 S.C. 196, 201, 174 S.E.2d 397, 399 (1970))). In an at-will employment contract, however, the law superimposes on the contract the express provision that the employer may fire the employee "at any time, for any reason or for no reason at all." *Prescott v. Farmers Tel. Coop., Inc.*, 335 S.C. 330, 334, 516 S.E.2d 923, 925 (1999). This includes a reason that may not be in good faith.

Thus, considering the circumstances surrounding an at-will employment relationship—in particular, the express provision of law that the employer may fire the employee for any reason—the terms implied in the contract do not

include the requirement that the employer have a good faith reason for firing the employee. *See Commercial Credit Corp.*, 247 S.C. at 367, 147 S.E.2d at 484 ("In the absence of an express provision therefor, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made." (quoting 17A C.J.S. *Contracts* § 328 (1963))). Stated differently, the implied promise to act in good faith does not protect the employee from being fired—no matter the reason—because the law specifically provides that the contract of employment permits *any* firing, even if it is not in good faith.

The "no" answer to the second part of the second question, therefore, derives not simply from the fact a firing "cannot form the basis of a claim," as the majority states. Rather, the "no" answer is required by the fact there can be no breach of the employment contract based on termination.

Thus, I would answer the second question in its entirety as follows: The implied covenant of good faith and fair dealing exists in an at-will employment contract; however, the covenant does not extend to an employer's termination of the employment because the law provides an employer may terminate an at-will employee at any time, for any reason, or for no reason at all, even for a reason that is not in good faith. Thus, there can be no breach of contract for firing an at-will employee.

This leads me to the third question. The theory of intentional interference with contractual relations requires proof of more than mere interference with the contract; it requires the plaintiff prove "intentional procurement of [the contract's] breach." *Eldeco, Inc. v. Charleston Cty. Sch. Dist.*, 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007). When an employer terminates an at-will employment contract, however, there can be no breach based on the termination. When there is no breach, there simply cannot be an "intentional procurement of [a] breach." As we held in *Eldeco, Inc.*, "Where there is no breach of the contract, there can be no recovery" for tortious interference with contractual relations. 372 S.C. at 481, 642 S.E.2d at 732. Therefore, it is not possible for "an employer's termination of an at-will employee . . . [to] give rise to a claim by the terminated employee against the third-party employee for tortious interference with a contractual relationship." I would answer the third question "no."

There is an additional reason I would answer the third question "no."  In this case, if Reid's report is accurate—in other words if Hall made sexual advances to her or otherwise treated her in a professionally inappropriate manner—then she did nothing actionable in reporting Hall's conduct to UBS.  In that event, any consequences Hall faces result not from Reid's report but from his own wrongful conduct.  Reid's report is actionable, and thus may be the cause of Hall's damages, only to the extent the report is false.  In that event, Hall has other theories of recovery against Reid, such as defamation.  I would require an employee who is fired from an at-will position as a result of a false report to the employer to rely on defamation, which provides defenses and privileges to the party making the report that the law holds appropriate in a civil action based on a false statement.

I concur as to the majority's "yes" answer to the first question.  I also concur as to the majority's "yes" and "no" answers to the two parts of the second question, although I differ slightly as to the explanation of our answer to the second part. I dissent from the majority's answer to the third question.  I would answer the third question "no."